# INTERNATIONAL HARVESTER COMPANY OF AMERICA *v.* STATE OF MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 166.  Argued April 29, 1914.—Decided June 8, 1914.

Although the state appellate court may not have referred to the constitutional questions in its opinion, this court cannot regard such silence as a condemnation of the time at, or manner in which, those questions were raised; and, if the record shows that they were raised in that court, this court has jurisdiction.

The Fourteenth Amendment does not preclude the State from adopting a policy against all combinations of competing corporations and enforcing it even against combinations which have been induced by good intentions and from which benefit and not injury may have resulted.

The power of classification which may be exerted in the legislation of

States has a very broad range; and a classification is not invalid under the equal protection provision of the Fourteenth Amendment because of simple inequality.

A state statute prohibiting combination is not unconstitutional as denying equal protection of the law because it embraces vendors of commodities and not vendors of labor and services. There is a reasonable basis for such a classification; and so *held* as to the Missouri anti-trust Laws of 1899 and 1909.

Questions of policy are for the legislature and not for this court to determine.

As classification must be accommodated to the problems of legislation; it may depend upon degree of evil so long as it is not unreasonable or arbitrary.

237 Missouri, 369, affirmed.


THE facts, which involve the constitutionality of the Missouri Anti-trust Acts of 1899 and 1909, are stated in the opinion.


*Mr. Edgar A. Bancroft* and *Mr. W. M. Williams,* with whom *Mr. Selden P. Spencer* and *Mr. Victor A. Remy* were on the brief, for plaintiff in error:

A Federal question was raised and was decided by the Missouri Supreme Court adversely to plaintiff in error.

The Missouri anti-trust statute is unconstitutional because it exempts from its operation and penalties all "combinations of persons engaged in labor pursuits" and is limited "to persons and corporations dealing in commodities."

Combinations of laborers, skilled or unskilled, no less than combinations of manufacturers and merchants, may restrain trade.

Anti-trust laws aiming to protect the freedom of trade and resting on the police power must include all persons who are capable of restraining trade.

Although certain state decisions support the exemption of labor and services, they are based on inconsistent and fallacious grounds.

Anti-trust laws must be co-extensive with the evils to be prevented and remedied.

The Missouri anti-trust statute is unconstitutional, because, while it prohibits arrangements and combinations designed or tending to lessen competition in the manufacture or sale of commodities, or to increase market prices, it does not prohibit arrangements or combinations between purchasers of commodities designed or tending to lessen competition or to decrease market prices.

A combination of buyers may restrain trade to the same extent and with the same or greater injury as a combination of sellers.

The Missouri anti-trust statute, as construed and applied by the state Supreme Court in its judgment herein, is unconstitutional because it unreasonably and arbitrarily violates and restrains plaintiff in error's right and freedom of contract beyond the police power of the State, thus depriving it of property without due process of law.

In support of these contentions, see *Adams* v. *Brenan*, 177 Illinois, 194; *Bailey* v. *Master Plumbers*, 103 Tennessee, 99; *Chaplin* v. *Brown*, 83 Iowa, 156, 157; *Cleland* v. *Anderson*, 66 Nebraska, 252, 260; *Columbia Water Power Co.* v. *Columbia St. Ry. Co.*, 172 U. S. 475, 487; *Commonwealth* v. *Int. Harvester Co.*, 131 Kentucky, 551; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 556; *Cote* v. *Murphy*, 159 Pa. St. 420; *Dier's Case* (Year Book, 2 Hen. V, fol. 5, pl. 26); *Downing* v. *Lewis*, 56 Nebraska, 386, 389; *Hunt* v. *Riverside Coöperative Club*, 140 Michigan, 538; *Ipswich Tailors' Case* (11 Coke's Rep. 53a); *Loewe* v. *Lawlor*, 208 U. S. 274, 301; *Meyer* v. *Richmond*, 172 U. S. 82, 91; *M., K. & T. R. Co.* v. *Elliott*, 184 U. S. 530; *More* v. *Bennett*, 140 Illinois, 69, 77; *Niagara Fire Ins. Co.* v. *Cornell*, 110 Fed. Rep. 816, 825; *Owen County Society* v. *Brumback*, 128 Kentucky, 137; *People* v. *Butler St. Foundry Co.*, 201 Illinois, 236, 257; *Rohlf* v. *Kasemeier*, 140 Iowa, 182, 190; *Slaughter House Cases*, 16 Wall. 127;

*Smiley* v. *Kansas*, 196 U. S. 447, 454; *St. L., I. M. & S. Ry. Co.* v. *McWhirter*, 229 U. S. 265, 276; *State* v. *Associated Press*, 159 Missouri, 410, 456; *State* v. *Croyle*, 7 Okla. Cr. 50; *State* v. *Duluth Board of Trade*, 107 Minnesota, 506, 546; *State* v. *Int. Harvester Co.*, 237 Missouri, 369; *State* v. *Standard Oil Co.*, 218 Missouri, 1, 370; *Swift & Co.* v. *United States*, 196 U. S. 375, 395; *United States* v. *Workingmen's Council*, 54 Fed. Rep. 994.

*Mr. John T. Barker*, Attorney General of the State of Missouri, with whom *Mr. W. T. Rutherford*, *Mr. W. M. Fitch*, *Mr. Thomas J. Higgs* and *Mr. Paul P. Prosser* were on the brief, for defendant in error:

There is no Federal question in this case and the judgment of the Missouri Supreme Court should be affirmed. *Astor* v. *Merritt*, 111 U. S. 401; *Powell* v. *Supervisor*, 150 U. S. 113; *Sayward* v. *Denny*, 158 U. S. 941; *Lone Wolf* v. *Hitchcock*, 187 U. S. 299; *Lohmeyer* v. *Company*, 214 Missouri, p. 688; *Brown* v. *Railroad*, 175 Missouri, p. 189; *Ross* v. *Company*, 241 Missouri, 299.

The Missouri anti-trust statutes are constitutional and have been so held many times. *Standard Oil Co.* v. *Missouri*, 224 U. S. 270; *Missouri* v. *Standard Oil Co.*, 218 Missouri, p. 368; *Missouri* v. *Tobacco Co.*, 177 Missouri, 37; *Missouri* v. *Insurance Co.*, 251 Missouri, 278; *Railroad* v. *Mackey*, 127 U. S. 209; *Barbier* v. *Connelly*, 113 U. S. 31; *Railroad Co.* v. *Ellis*, 165 U. S. 150; *United States* v. *Association*, 171 U. S. 505; *Missouri* v. *Int. Harvester Co.*, 237 Missouri, 369.

MR. JUSTICE McKENNA delivered the opinion of the court.

Information in the nature of *quo warranto* brought in the Supreme Court of the State to exclude plaintiff in error from the corporate rights, privileges and franchises exer-

cised or enjoyed by it under the laws of the State, that they be forfeited, and all or such portion of its property as the court may deem proper be confiscated or in lieu thereof a fine be imposed upon it in "punishment of the perversion, usurpation, abuse and misuse of franchises."

The ground of the action is the alleged violation of the statutes of the State passed respectively in 1899 and 1909 and entitled "Pools, Trusts and Conspiracies" and "Pools, Trusts and Conspiracies and Discriminations."

The facts alleged in the information are these: Plaintiff in error is a Wisconsin corporation engaged in the manufacture and sale of agricultural implements, binders, mowers, etc., and was licensed on the fifth of April, 1892, to do business in Missouri under the name of the Milwaukee Harvester Company, and on September 18, 1902, became licensed to do and engaged in such business in the State. In that year the International Harvester Company of New Jersey was organized with a capital stock of $120,000,000 for the purpose of effecting a combination of plaintiff in error and certain other companies to restrain competition in the manufacture and sale of such agricultural implements in Missouri, and the New Jersey company has maintained plaintiff in error as its sole selling agent in Missouri. Before the combination the companies combined were competitors of one another and of other corporations, individuals and partnerships engaged in the same business in the State and that thereby the people of the State, and particularly the retail dealers and farmers of the State, received the benefit of competition in the purchase and sale of farm implements. The combination was designed and made with a view to lessen, and it tended to lessen, free competition in such implements, and thereby the said corporations entered into and became members of a pool, trust, combination and agreement. In furtherance thereof and for the purpose of giving the International Harvester Company of New Jersey a

monopoly of the business of manufacturing and selling agricultural implements in the State, and for the purpose of preventing competition in the sale thereof, plaintiff in error has compelled the retail dealers in each county of the State who desire to handle and sell or act as agent for it to refrain from selling implements manufactured or sold by competing companies or persons. By reason thereof competition in such implements has been restrained, prices controlled, the quantity of such implements has been fixed and limited, and plaintiff in error has been able to secure, and for several years enjoy, from 85% to 90% of the business, all to the great damage and loss of the people of the State, and by reason of its participation in the pool, trust and combination and by reason of the acts and things done by it plaintiff in error has been guilty of an illegal, wilful and malicious perversion and abuse of its franchises, privileges and licenses granted to it by the State.

The answer of plaintiff in error denied that it had become a party to any combination or that in its transactions there was any purpose to restrain or lessen competition, or that trade had been or was restrained.

The case was referred to a special commissioner to take the evidence and report his conclusions. He found, as alleged in the information, that the International Harvester Company of New Jersey was a combination of the properties and businesses of formerly competing harvester companies, and plaintiff in error being one of such companies and, thereafter by selling the New Jersey company's products in Missouri, had violated the Missouri statutes against pools, trusts and conspiracies.

In exceptions to the report of the special commissioner plaintiff in error urged that the statute of Missouri violated the equality clause and due process clause of the Fourteenth Amendment to the Constitution of the United States, "(1) Because said statute arbitrarily discrim-

inates between persons making or selling products and commodities and persons selling labor ·and service of all kinds: In that each section of said statute applies only to articles of merchandise and not to labor or services and the like, the prices of which are equally and similarly determined by competition, and may be equally and similarly the subject of combination and conspiracy to the detriment of the public.   (2) Because said statute arbitrarily discriminates between the *makers and sellers·* of products and commodities and the *purchasers* thereof: It prohibits manufacturers and sellers from making contracts or arrangements intended or tending to increase the market price of the articles they make or sell, but does not prohibit purchasers from combining to fix or reduce the market price of the commodities or articles to be purchased by them.   (3) Because said statute, as construed by the Commissioner, unreasonably and arbitrarily interferes with plaintiff in error's right to make proper and reasonable business contracts, and deprives it of property rights in respect thereto."

These exceptions were urged and argued in the Supreme Court upon the filing of the commissioner's report.  Judgment was entered upon the report, in which it was adjudged that by reason of the violation of the statutes of the State as charged in the information, plaintiff in error had forfeited the license theretofore granted to it to do business in the State, and it was adjudged that the license be forfeited and canceled and the company ousted from its rights and franchises granted by the State to do business in the State, and a fine of $50,000 was imposed upon it. It was, however, provided that upon payment of the fine on or before the first of January, 1912, and immediately ceasing all connection with the International Harvester Company of New Jersey and the corporations and copartnerships with which it had combined, and not continuing and maintaining the unlawful agreement and com-

bination with them to lessen and destroy competition .in the sale of the enumerated farm implements and giving satisfactory evidence thereof to the court, the judgment of ouster should be suspended. The company was given until March 1, 1912, "to file its proof of willingness" to comply with the judgment. It was also adjudged that upon a subsequent violation of the statute "the suspension of the writ of ouster shall be removed" by the court "and absolute ouster be enforced," and to that end the court retained "its full and complete jurisdiction over the cause." 237 Missouri, 369.

A motion is made to dismiss on the ground that plaintiff in error in its answer simply denied that it had violated the anti-trust laws of the State, and, it is contended, that by not alleging in its answer that those laws violated the Constitution of the United States it waived such defense. It is further contended that because the Federal right was not asserted in the answer the Supreme Court of the State could not have considered and did not consider or decide it. Decisions of the Supreme Court of Missouri are cited to sustain the contentions. The decisions declare the proposition that constitutional questions must be raised at the first opportunity or, as it is expressed in one of the cases (*Brown* v. *Railway Co.*, 175 Missouri, 185, 188), "the protection of the Constitution must be timely and properly invoked in the trial court."

In *Milling Company* v. *Blake*, 242 Missouri, 23, 31, it is said: "The rule of this court is that so grave a question [constitutional question] must be lodged at the first opportunity, or it will be deemed to have been waived. If it can be appropriately and naturally raised in the pleadings, and thereby be a question lodged in the record proper, such is the time and place to raise it," and that it is too late to raise the question after judgment in a motion for new trial. In *Hertzler* v. *Railway Co.*, 218 Missouri, 562, 564, it was held: "The motion for a new trial was not

the first door open for the question to enter, and in our later decisions we have ruled that a question of such gravity must be raised as soon as orderly procedure will allow. This, in order that the trial court may be treated fairly and the question get into the case under correct safeguards and earmarked as of substance and not mere color."

It is manifest, we think, that the court only intended to express the condition of appellate review to be that in the trial court constitutional questions should not be reserved until the case had gone to judgment on other issues, and then used to secure a new trial. The principle of the rulings is satisfied in the case at bar. It is, as we have seen, an original proceeding in the Supreme Court and upon the report of the commissioner which brought the case to the court for decision of the issues and questions involved in it the Federal questions were made "under correct safeguards and earmarked as of substance and not mere color." It is true the court has not referred to them in its opinion, but we cannot regard its silence as a condemnation of the time or manner at or in which they were raised. The motion to dismiss is, therefore, denied.

The assignments of error necessarily involve a consideration of the statutes. The relevant provisions are contained in § 10301 of the Revised Statutes of the State of 1909, and § 8966 of the Revised Statutes of 1899.

Section 10301 provides, "that all arrangements, contracts, agreements, combinations or understandings made, or entered into between any two or more persons, designed or made with a view to lessen, or which tend to lessen, lawful trade, or full and free competition in the importation, transportation, manufacture or sale" in the State "of any product, commodity or article, or thing bought and sold," and all such arrangements, etc., "which are designed or made with a view to increase, or which tend to increase the market price of any product, commodity or article or thing, of any class or kind whatsoever

bought and sold," are declared to be against public policy, unlawful and void, and those offending "shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and punished" as provided.

Section 8966 provides that arrangements, etc., such as described in § 10301, having like purpose, and all such arrangements, etc., "whereby, or under the terms of which, it is proposed, stipulated, provided, agreed or understood that any person, association of persons or corporations doing business in" the State, "shall deal in, sell or offer for sale" in the State "any particular or specified article, product or commodity, and shall not during the continuance or existence of any such arrangement, . . . deal in, sell or offer for sale," in the State, "any competing article, product or commodity," are declared to be against public policy, unlawful and void; and any person offending "shall. be deemed and adjudged guilty of a conspiracy to defraud, and be subject to the penalties" provided.

By § 10304 of the Revised Statutes of 1909 it is provided that domestic offending corporations shall forfeit their charters and all or any part of their property as shall be adjudged by a court of competent jurisdiction, or be fined in lieu of the forfeiture of charters or of property.

Foreign offending corporations shall forfeit their right to do business in the State, with forfeiture also of property or, in lieu thereof, the payment of a fine.

In *State* v. *Standard Oil Co.*, 218 Missouri, 1, 370, 372, the Supreme Court held that the anti-trust statutes of the State "are limited in their scope and operations to persons and corporations dealing in commodities, and do not include combinations of persons engaged in labor pursuits." And, justifying the statutes against a charge of illegal discrimination, the court further said that "it must be borne in mind that the differentiation between labor and property is so great that they do not belong to the same

general classification of rights, or things, and have never been so recognized by the common law, or by legislative enactments."

Accepting the construction put upon the statute, but contesting its legality as thus construed, plaintiff in error makes three contentions, (1) The statutes as so construed unreasonably and arbitrarily limit the right of contract; (2) discriminate between the vendors of commodities and the vendors of labor and services, and (3) between vendors and purchasers of commodities.

(1). The specification under this head is that the Supreme Court found, it is contended, benefit—not injury—to the public had resulted from the alleged combination. Granting that this is not an overstatement of the opinion the answer is immediate. It is too late in the day to assert against statutes which forbid combinations of competing companies that a particular combination was induced by good intentions and has had some good effect. *Armour Packing Co.* v. *United States,* 209 U. S. 56, 62; *Standard Sanitary Mfg. Co.* v. *United States,* 226 U. S. 20, 49. The purpose of such statutes is to secure competition and preclude combinations which tend to defeat it. And such is explicitly the purpose and policy of the Missouri statutes; and they have been sustained by the Supreme Court. There is nothing in the Constitution of the United States which precludes a State from adopting and enforcing such policy. To so decide would be stepping backwards. *Carroll* v. *Greenwich Ins. Co.,* 199 U. S. 401; *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157.

It is true that the Supreme Court did not find a definite abuse of its powers by plaintiff in error, but it did find that there was an offending against the statute, a union of able competitors and a cessation of their competition, and the court said, p. 395: "Some of the smaller concerns that were competitors in the market have ceased their struggle for existence and retired from the field." This is one

of the results which the statute was intended to prevent, the unequal struggle of individual effort against the power of combination. The preventing of the engrossment of trade is as definitely the object of the law as is price regulation of commodities, its prohibition being against combinations "made with a view to lessen, or which tend to lessen, lawful trade or full and free competition in the importation, transportation, manufacture or sale of any commodity, or article or thing bought or sold." See *Standard Oil Co.* v. *United States*, 221 U. S. 1; *United States* v. *American Tobacco Co.*, Id. 106; *United States* v. *Patten*, 226 U. S. 525.

(2) and (3). These contentions may be considered together, both involving a charge of discrimination—the one because the law does not embrace vendors of labor, the other because it does not cover purchasers of commodities as well as vendors of them. Both, therefore, invoke a consideration of the power of classification which may be exerted in the legislation of the State. And we shall presently see that power has very broad range. A classification is not invalid because of simple inequality. We said in *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews*, 174 U. S. 96, 106, by Mr. Justice Brewer, "The very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." Therefore, it may be there is restraint of competition in a combination of laborers and in a combination of purchasers, but that does not demonstrate that legislation which does not include either combination is illegal. Whether it would have been better policy to have made such comprehensive classification it is not our province to decide. In other words, whether a combination of wage earners or purchasers of commodities called for repression by law under the conditions in the State was for the legislature of the State to determine.

In *Carroll* v. *Greenwich Ins. Co., supra,* a statute of
Iowa was considered which made it unlawful for two or
more fire insurance companies doing business in the State,
or their officers or agents, to make or enter into combina-
tions or agreements in relation to the rates to be charged
for insurance, and certain other matters.  The provision
was held invalid by the Circuit Court of the United States
for the District of Iowa on the ground of depriving of
liberty of contract secured by the Fourteenth Amendment
and of the equal protection of the laws.  This court
reversed the decision, saying, after stating that there was a
general statute of Iowa which prohibited combinations to
fix the price of any article of merchandise or commodity or
to limit the quantity of the same produced or sold in the
State, "Therefore the act in question does little if anything
more than apply and work out the policy of the general
law in a particular case."  Again, "If an evil is specially
experienced in a particular branch of business, the Con-
stitution embodies no prohibition of laws confined to the
evil, or doctrinaire requirement that they should be
couched in all-embracing terms."  And, "If the legislature
of the State of Iowa deems it desirable artificially to pre-
vent, so far as it can, the substitution of combination for
competition, this court cannot say that fire insurance may
not present so conspicuous an example of what the legisla-
ture thinks an evil as to justify special treatment.  The
imposition of a more specific liability upon life and health
insurance companies was held valid in *Fidelity Mutual
Life Insurance Company* v. *Mettler,* 185 U. S. 308." (199
U. S. p. 411.)  Other cases were also cited in illustration.

*Carroll* v. *Greenwich Ins. Co., supra,* is especially ap-
posite.  It contains the elements of the case at bar and a
decision upon them.  It will be observed that the statute,
which it was said declared the general policy of Iowa, was
a prohibition against a combination of producers and
sellers.  There was the same distinction, therefore, be-

tween vendors and purchasers of commodities as in the
Missouri statute and the same omission of prohibition of
combinations of vendors of labor and services as in the
Missouri law. The distinction and omission were con-
tinued when the policy of the State was extended to
insurance companies. The law was not condemned be-
cause it went no farther—because it did not prohibit the
combination of all trades, businesses and persons. We
held that the omission was not for judicial cognizance, and
that a court could not say that fire insurance might not
present so conspicuous an example of what the legislature
might think an evil "as to justify special treatment."

We might leave the discussion with that and the other
cases. They decide that we are helped little in determin-
ing the legality of a legislative classification by making
broad generalizations, and it is for a broad generalization
that plaintiff in error contends—indeed, a generalization
which includes all the activities and occupations of life,
and there is an enumeration of wage earners in emphasis
of the discrimination in which manufacturers and sellers
are singled out from all others. The contention is de-
ceptive, and yet it is earnestly urged in various ways which
it would extend this opinion too much to detail. "In deal-
ing with restraints of trade," it is said, "the proper basis
of classification is obviously neither in commodities nor
services, nor in persons, but in *restraints*." A law, to be
valid, therefore, is the inflexible deduction, cannot dis-
tinguish between "*restraints*," but must apply to all re-
straints, whatever their degree or effect or purpose, and
that because the Missouri statute has not this universal
operation it offends against the equality required by the
Fourteenth Amendment. This court has decided many
times that a legislative classification does not have to pos-
sess such comprehensive extent. Classification must be
accommodated to the problems of legislation, and we de-
cided in *Ozan Lumber Co.* v. *Union County Bank*, 207 U. S.

251, that it may depend upon degrees of evil without being
arbitrary or unreasonable. We repeated the ruling in
*Heath & Milligan Mfg. Co.* v. *Worst,* 207 U. S. 338, in
*Engel* v. *O'Malley,* 219 U. S. 128, in *Mutual Loan Co.* v.
*Martell,* 222 U. S. 225, and again in *German Alliance In-
surance Company* v. *Kansas,* 233 U. S. 389, 418. In the
latter case a distinction was sustained against a charge of
discrimination between stock fire insurance companies and
farmers' mutual insurance companies insuring farm prop-
erty. If this power of classification did not exist, to what
straits legislation would be brought. We may illustrate
by the examples furnished by plaintiff in error. In the
enumeration of those who, it is contended, by combination
are able to restrain trade are included, among others,
"persons engaged in domestic service" and "nurses," and
because these are not embraced in the law, plaintiff in
error, it is contended, although a combination of com-
panies uniting the power of $120,000,000 and able thereby
to engross 85% or 90% of the trade in agricultural im-
plements, is nevertheless beyond the competency of the
legislature to prohibit. As great as the contrast is, a
greater one may be made. Under the principle applied a
combination of all the great industrial enterprises (and
why not railroads as well?) could not be condemned unless
the law applied as well to a combination of maidservants
or to infants' nurses, whose humble functions preclude
effective combination. Such contrasts and the considera-
tions they suggest must be pushed aside by government,
and a rigid and universal classification applied, is the con-
tention of plaintiff in error; and to this the contention
must come. Admit exceptions, and you admit the power
of the legislature to select them. But it may be said the
comparison of extremes is forensic, and, it may be, fal-
lacious; that there may be powerful labor combinations
as well as powerful industrial combinations, and weak
ones of both, and that the law to be valid cannot distin-

guish between strong and weak offenders. This may be
granted (*Engel* v. *O'Malley, supra*), but the comparisons
are not without value in estimating the contentions of
plaintiff in error. The foundation of our decision is, of
course, the power of classification which a legislature may
exercise, and the cases we have cited, as well as others
which may be cited, demonstrate that some latitude must
be allowed to the legislative judgment in selecting the
"basis of community." We have said that it must be
palpably arbitrary to authorize a judicial review of it, and
that it cannot be disturbed by the courts "unless they
can see clearly that there is no fair reason for the law that
would not require with equal force its extension to others
whom it leaves untouched." *Mo., Kan. & Tex. Ry. Co.* v.
*May*, 194 U. S. 267, 269; *Williams* v. *Arkansas*, 217 U. S.
79, 90; *Watson* v. *Maryland*, 218 U. S. 173, 179.

  The instances of these cases are instructive. In the first
there was a difference made between land owners as to
liability for permitting certain noxious grasses to go to
seed on the lands. In the second, the statute passed on
made a difference between businesses in the solicitation of
patronage on railroad trains and at depots. In the third
a difference based on the evidence of qualification of physi-
cians was declared valid.

  In *Western Union Telegraph Co.* v. *Milling Co.*, 218
U. S. 406, a distinction was made between common car-
riers in the power to limit liability for negligence. In
*Engel* v. *O'Malley, supra*, a distinction between bankers
was sustained; and in *Provident Savings Institution* v.
*Malone*, 221 U. S. 660, deposits in savings banks were dis-
tinguished from deposits in other banks in the application
of the statute of limitations.

  Other cases might be cited whose instances illustrate the
same principle and in which this court has refused to ac-
cept the higher generalizations urged as necessary to the
fulfilment of the constitutional guaranty of the equal pro-

tection of the law, and in which we, in effect, held that it is competent for a legislature to determine upon what differences a distinction may be made for the purpose of statutory classification between objects otherwise having resemblances. Such power, of course, cannot be arbitrarily exercised. The distinction made must have reasonable basis. *Magoun* v. *Illinois Trust &c. Bank,* 170 U. S. 283; *Clark* v. *Kansas City,* 176 U. S. 114; *Gundling* v. *Chicago,* 177 U. S. 183; *Petit* v. *Minnesota,* 177 U. S. 164; *Williams* v. *Fears,* 179 U. S. 270; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Griffith* v. *Connecticut,* 218 U. S. 563; *Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453, 466; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 79; *Fifth Avenue Coach Co.* v. *New York,* 221 U. S. 467; *Murphy* v. *California,* 225 U. S. 623; *Rosenthal* v. *New York,* 226 U. S. 260, 269, 270; *Mo., Kan. & Tex. Ry.* v. *Cade,* 233 U. S. 642.

And so in the case at bar. Whether the Missouri statute should have set its condemnation on restraints generally, prohibiting combined action for any purpose and to everybody, or confined it as the statute does to manufacturers and vendors of articles and permitting it to purchasers of such articles; prohibiting it to sellers of commodities and permitting it to sellers of services, was a matter of legislative judgment and we cannot say that the distinctions made, are palpably arbitrary, which we have seen is the condition of judicial review. It is to be remembered that the question presented is of the power of the legislature, not the policy of the exercise of the power. To be able to find fault, therefore, with such policy is not to establish the invalidity of the law based upon it.

It is said that the statute as construed by the Supreme Court of the State comes within our ruling in *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, but we do not think so. If it did we should, of course, apply that ruling here.

*Judgment affirmed.*