NEW JERSEY PAINTING COMPANY, complainant-respondent,

v.

LOCAL NO. 26, BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, et al., defendants-appellants.

[Argued May 29th, 1924.    Decided October 20th, 1924.]

1. The statute (*P. L. 1883 p. 36; 3 Comp. Stat. of N. J. p. 3051 § 128*), which provides that it shall not be unlawful for any two or more persons to unite, &c., to persuade, &c., by peaceable means, &c., to enter into any combination for or against leaving or entering into the employment of any person or corporation applied. The *dictum* in the case of *Jonas Glass Co.* v. *Glass Bottle Blowers Asso.. 77 N. J. Eq. 219*, disapproved

2. A clause in the constitution of a labor union, which provides that "where there is a difference between the wage scale of two cities all members employed upon a job done in one of the two cities by an employer from the other shall receive the higher of the two wage scales" is not illegal, as creating an unfair discrimination or an unfair restraint of trade. It may be enforced by a voluntary combination of its members. The prime object of the clause or rule is to establish a standard of wages. The record in this case does not present a case for injunctive relief.

3. The mere combination of action by workers is not the element which gives an illegal character to the act. It is the illegality of the purpose to be accomplished, or the illegal means used separately or in furtherance of that purpose, which makes the act illegal. Workmen may combine to accomplish an economic advantage such as to establish a standard of wages throughout the United States.

On bill for injunction.

*Mr. Henry Carless* (*Mr. Morris Hillquit*, of the New York bar), for the appellants.

*Mr. Merritt Lane*, for the respondents.

The opinion of the court was delivered by

*96 N. J. Eq.*    N. J. Painting Co. *v.* Local No. 26, &c.

BLACK, J.

The meritorious question involved in this case is a controversy between an employer and organized labor. The bill of complaint filed contains a prayer for an injunction against the defendants from ordering, advising, encouraging, participating in, persuading, contributing money or advice to any strike or cessation of work of any of complainant's employes. Also, from suggesting to any person or persons, including members of said union, that they should refrain from being employed by the complainant. The bill of complaint specifically charges that in the month of January, 1922, at a convention of the International Painters and Paperhangers, held at Dallas, Texas, the convention passed a rule that, where a contractor took work away from his home town, he should pay the rate of wages and observe the union conditions prevailing in his home town, if that rate of wages or working conditions were more favorable to the workman than the union scale prevailing in the district in which the work was to be done, otherwise he should pay the union scale and observe the union conditions prevailing in the place in which the work was to done.

It is further alleged that such a rule is illegal and violative of the constitutional right of employers of labor, in that it creates an illegal and unjust discrimination. It has so, it is alleged, the effect of making it more expensive for the person not living in the particular district to do work therein.

It is further alleged that, in the early part of 1922, the complainant took a contract for the painting and interior decorating of the Shelbourne Hotel in Atlantic City, and for the Bamburger Building in Newark, New Jersey. The union scale of wages in Atlantic City and Newark were the same, to wit, $8 a day for eight hours' work, five and a half days a week. The jobs were commenced under these conditions.

It is further alleged that on Thursday, the 4th day of May, 1922, Herman Landow, business representative of District No. 10, Brotherhood of Painters, Decorators and Paperhangers of America, ordered the employes of the com-

plainant to cease work upon the job at Bamberger's Building in Newark, New Jersey, unless the New York working rules of $9 a day for eight hours' work, five days a week, were observed. The employes of complainant were ordered to strike, and did strike, although they had no reason whatsoever to cease their work, other than the orders given by the said business agent, Herman Landow. A similar allegation is made as to the job on the Shelbourne Hotel in Atlantic City, New Jersey.

It is further alleged that the Bamberger job was not complete, and would not be completed, unless the complainant is allowed to proceed with the work without paying the prevailing wage scale in New York City. The complainant will not be able to finish the work and its business will be irreparably injured.

The decree follows closely the prayer of the bill and grants the restraint prayed for, without specifically mentioning the Bamberger job. It restrains the defendants from doing any acts or things in an attempt to enforce the provisions of the rule of the said union referred to in the bill of complaint. The grounds upon which the decree was advised by the learned vice-chancellor are, that such discrimination in the scale of wages is an unfair restraint of trade, inimical to the public welfare and in violation of public policy; that the operation of such rules and regulations by the union is illegal and the strike is for an unlawful purpose. There is substantially no dispute about the facts. So, the whole problem for solution may be stated in a single sentence. Is such a rule of the defendants legal; and, if so, may it be enforced by penalties imposed upon its members for disobedience, which they submit to voluntarily, without violating the law? Thus, it will be seen, that the question involved is much narrower in its scope and quite clearly distinguished from any of the adjudged cases that we have examined or cited involving labor disputes. The record shows that William H. Bennett, the foreman of the complainant at the Bamberger job, testified he went to work around the 1st of May, "some days had four, some days six, some days eight, some days two men.

*96 N. J. Eq.*    N. J. Painting Co. *v.* Local No. 26, &c.

When work was started we were paying $9 per day, the New York rate. The business agent came to me and told me he wanted fifty per cent. of the work;" two New York and two New Jersey men. "I was to pay the Jersey men $8 per day, which was the Jersey rate." "This was around May 4th." "The men wouldn't go to work for $8." "Q. What did he say? A. Came on the job, and as soon as these men went to him and told him that the foreman wanted them to go to work for $8 he came down and knocked me and another man off. If you don't [*i. e.,* quit work] he puts a fine on you. After that I reported to the company [*i. e.,* to Robert E. Mackay]; after that I paid the New York rate, $9 per day, for six or seven weeks, I should judge; until I got caught up with the job. Then I stopped work." "Q. Then what happened? "Then went back on the job again? A. No. They put an ad. in the paper. I went back on the job and opened it up. "Two young men walked up and they asked me if I was doing the hiring. I told them yes, there was a job there for them to go to work for $8 [eight dollars] per day. They say that was 'all right, that was all the Jersey scale was. They were willing to go to work for it.'" Then another business agent walked up, W. J. Wylie. "Wylie went and was talking to them." "Q. What happened? A. The men came to me and said, 'we can't go to work,' and walked away." Robert E. Mackay, of Robert E. Mackay, Inc., of No. 326 West Twenty-third street, New York City, testified that he owned the stock of the complainant company "Q. Is there anyone else beneficially interested in the corporation except yourself? A. No, sir." "Q. When did you make up your mind not to comply any longer with the union conditions with respect to labor? A. When they got me where my hair was short at the start, and I waited until their hair got short and stopped. When the work got up so I could shut it down I did." Record, page 69. "I then advertised for local help. I shut it down for several days to get rid of the old men, see. Then I advertised for new men, and, when they applied, as Mr. Bennett said, they were

offered the eight-dollar rate and were willing to go to work, but the delegate would not let them go to work."

The complainant was a subcontractor, under an agreement dated April 13th, 1922, with George A. Fuller Company, for all the painting and finishing work required to complete section A of the new addition to the Bamberger Building in Newark, New Jersey.

The amendment or rule to the general constitution, section 62, as passed at Dallas, Texas, referred to in the bill of complaint, out of which arose this controversy, is as follows:

"Where there is a difference between the wage scale of two cities all members employed upon a job done in one of the two cities by an employer from the other [whether sent from the city in which the employer's place of business is situated or hired in the city where the work is done] shall receive the higher of the two wage scales."

This rule was supplemented by another rule, which is that, at least, fifty per cent. of the employes should be from the locality in which the work is being done. Such are the essential or dominant facts, which are not controverted.

In 1883 the legislature of New Jersey passed an act which provides (1) "that it shall not be unlawful for any two or more persons to unite, combine or bind themselves by oath, covenant, agreement, alliance or otherwise, to persuade, advise or encourage, by peaceable means, any person or persons to enter into any combination for or against leaving or entering into the employment of any person, persons or corporation." *P. L. 1883 p. 36; 3 Comp. Stat. of N. J. p. 3051 § 128.*

This statute was referred to by this court in the case of *Jonas Glass Co.* v. *Glass Bottle Blowers' Asso.*, 77 N. J. Eq. 219, thus the act 1883 is properly to be treated as merely rendering the combination no longer indictable; in effect, as repealing the rule laid down by the supreme court of this state in the case of *State* v. *Donaldson, 32 N. J. Law 151.* This statement was unnecessary to the decision of that case. It was *mere dictum.* The basis, if not an exact copy of that statement, was an oral deliverance by Vice-Chancellor Pit-

ney, in the case of *Frank & Dugan* v. *Herold, 63 N. J. Eq. 447.* The statute is much broader in its scope than the above statement of *dictum* would seem to indicate.

This statute has been under consideration in the court of chancery in several cases; thus, by Vice-Chancellor Green in the case of *Mayer* v. *Journeymen Stonecutters' Asso., 47 N. J. Eq. 531,* where the learned vice-chancellor said: "So long as they [*i. e.,* the workers] confine themselves to peaceable means to effect these ends [*i. e.,* the control of the work connected with their trade], they are within the letter and spirit of the law, and not subject to the interference of the courts." *Barr* v. *Essex Trades Council, 53 N. J. Eq. 119.* This case was cited with approval by the supreme court of Missouri in *Lohse Patent Door Co.* v. *Fuelle, 215 Mo. 457.* This statute left still subject to the inhibition of law every other illegal combination, except these mentioned in the statute. So, in the case of *Cumberland Glass Manufacturing Co.* v. *Glass Bottle Blowers' Asso., 59 N. J. Eq. 53,* Vice-Chancellor Reed said: "By its terms [*i. e.,* the statute] it is lawful for the workmen to combine to persuade, by peaceable means, any person or persons to enter into any combination for the leaving or entering into the employment of any person or persons or corporation. The words employed by the statute cover a combination for the purpose of persuading others to combine, for the purpose of entering or leaving an employment. According to the act, the means adopted must be peaceable." *Jersey City Printing Co.* v. *Cassidy, 63 N. J. Eq. 762; Baldwin Lumber Co.* v. *Local No. 560, 91 N. J. Eq. 240.*

Since the passage of the statute in New Jersey, in 1883, the rule of the common law, that combinations of two or more persons, which were held to be illegal, has been greatly modified in this country, in its application to labor unions and labor disputes. The weight of authority by the more recent cases now seems to be that, an act lawful, if done by one, is not necessarily rendered unlawful by the mere fact of concerted action. To render such concerted act unlawful, the object or the means used must be unlawful or exercised

for the malicious purpose of injuring another. Mere concert of action, in and of itself, not being sufficient to render the act illegal. *American Federation of Labor* v. *Bucks Stove, &c., Co., 33 App. D. C. 83; 32 L. R. A. (N. S.) 748; 221 U. S. 418; 16 R. C. L. 430 §§ 13, 14; Meier* v. *Speer, 96 Ark. 618; 32 L. R. A. (N. S.) 792; 24 Cyc. 819.*

Employes, said Chief-Justice McSherry, have a perfect legal right to fixe a price upon their labor, and to refuse to work unless that price is obtained. They have that right both as individuals and in combination. They may organize to improve their condition and to secure better wages. *My Maryland Lodge* v. *Adt, 100 Md. 238, 349; National Protective Asso.* v. *Cummings, 170 N. Y. 315, 321; 58 L. R. A. 135; 16 R. C. L. 432 § 16.*

So, it has been held, they may stop work, unless nonmembers are discharged, and will not be enjoined from so doing, where they act for the good of their organization and not from malice or a desire to injure others. *National Protective Asso.* v. *Cummings, 170 N. Y. 315. Contra,* in the supreme court of New Jersey before the statute of 1883. *State* v. *Donaldson, 32 N. J. Law 151.*

The standard of reasonable conduct, under all the circumstances of the case, is made the test in some cases. *Huskie* v. *Griffin, 75 N. H. 345; 27 L. R. A. (N. S.) 966.*

The mere combination of action is not the element which gives an illegal character to the act. It is the illegality of the purpose to be accomplished, or the illegal means used separately or in furtherance of the purpose, which makes the act illegal. *Lindsay & Co.* v. *Montana Federation of Labor, 37 Mont. 264, 273; 18 L. R. A. (N. S.) 707; Vegelahn* v. *Guntner, 167 Mass. 92, 98; 16 L. R. A. (N. S.) note 85.*

The rule adopted and promulgated by the defendants is not aimed at and does not apply to the complainant solely. It does not seek to establish arbitrary discriminations between one person or corporation and another. It applies to all employing painters within the whole territory of the United States who undertake to do work outside of their home districts. It applies to all alike, automatically, who

come within the prescribed rule. Co-operation in some form now seems to be an economic necessity in all business, trade and occupations throughout the United States, if not throughout the entire world.

An accurate and lucid statement of the rule to be applied was made by Chief-Justice Taft, when sitting as a circuit judge, in the case of *Toledo, &c., Railroad Co.* v. *Pennsylvania Co., 54 Fed. Rep. 746; 19 L. R. A. 387, 392:* "Ordinarily, when such a combination of persons does not use violence, actual or threatened, to accomplish their purpose, it is difficult to point out with clearness the illegal means or end which makes the combination an unlawful conspiracy; for it is generally lawful for the combiners to withdraw their intercourse and its benefits from any person and to announce their intention of doing so, and it is equally lawful for the others, of their own motion, to do that, which the combiners seek to compel them to do."

None of these cases, however, nor any of the cases which we have found and examined, decide the precise point involved in the record of this case. There is a wealth of learning and many cases in the books on this general topic. Some of the more recent illustrative and important ones are the following: *Saulsbury* v. *Coopers' International Union, 147 Ky. 170; Karges Furniture Co.* v. *Amalgamated Woodworkers' Local Union, 165 Ind. 421, 428; Gray* v. *Building Trades Council, 91 Minn. 171; Lohse Patent Door Co.* v. *Fuelle, 215 Mo. 421; Minasian* v. *Osborne, 210 Mass. 250; Pickett* v. *Walsh, 192 Mass. 572; Bossert* v. *Dhuy, 221 N. Y. 342; State* v. *Stockford, 77 Conn. 227; Hitchman Coal, &c., Co.* v. *Mitchell, 245 U. S. 229; 12 Corp. Jur. 570; 16 R. C. L. 430 §§ 13, 14; 24 Cyc. 819c; Eddy Trade Com.*

The above cases, and nearly all the cases in this country, quite uniformly hold, and the complainant seems to concede, that the union may arbitrarily fix a uniform scale of wage applicable to all its members and strike to enforce its demands, *i. e.,* either to maintain or advance a scale of wages; and the strike will not be interfered with by the courts if it is lawfully carried on. *Bossert* v. *Dhuy, supra.* But

the argument by the complainant, followed by the learned vice-chancellor in this case, seems to be based upon the idea that the union cannot in good faith frame or adopt a rule providing for a sliding scale of wages to fit ostensibly the varying local economic conditions throughout the United States, which, in effect, does discriminate against some employers as a class in the matter of wages to be paid. It seems to be based upon the ground that such regulations create an unfair restraint of trade. The attack is aimed, not at the combination, but at its effect upon the employers. This is unsound, both legally and economically. In the last analysis the prime object of the rule attacked is to establish a standard of wages. It is hardly necessary to enter into any extended discussion pointing out that in law or by analogy article 4, section 2, and article 14, section 1 of the constitution of the United States are not applicable to private contracts. These sections are directed against state action only. *United States* v. *Harris, 106 U. S. 643.* Economically, the conclusion reached by the lower court confuses the possible or probable effect of the defendants' action upon the employers with the defendants' rights. The law gives the defendants a right to sell their labor to whom they please, when and under such conditions as they may fix, individually or in combination. They may make rules and regulations, passed in good faith, providing for what they deem to be an economic advantage to themselves. If, in the enforcement of such rules and regulations, they violate no law, but act solely for the declared purpose, the courts ought not and cannot legally enjoin them from such concerted action, simply because such action may affect some employers. How can it be said that such rules and regulations create an unfair restraint of trade? If the law gives the workers such rights, it must protect them in their enjoyment. They cannot be enjoined from their use or interfered with by the courts. Employers have no vested interest in the labor of workers. We think the defendants, by the terms of the statute of 1883, both its letter and spirit, are within its protection. They are also

within the protection of the law as declared in the cases cited. The cases, in which concerted action on the part of a body of workers has been held unlawful, have invariably been such, in which either the object sought to be attained had little or no bearing on the interest of the workers or in which the methods employed by them were in themselves unlawful.

We, therefore, conclude the record does not present a case for injunctive relief. The decree of the court of chancery is reversed and the bill of complaint should be dismissed.

*For affirmance*—KALISCH, KATZENBACH, LLOYD, WHITE, GARDNER—5.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, CAMPBELL, VAN BUSKIRK, CLARK, MC-GLENNON, KAYS—10.