**H. LIPMAN & SONS, Inc. v BROTHER-. HOOD OF PAINTERS, DECORATORS & PAPER HANGERS OF AMERICA et**

Ohio Appeals, 1st Dist, Hamilton Co.

Decided July 3, 1939

Sol Goodman, Cincinnati, for appellant.

J. W. Brown, Cincinnati, for appellees.

**OPINION**

By MATTHEWS, J.

This appeal on law and fact from the judgment of the Common Pleas Court of Hamilton county presents to this court for determination the issue of whether the observance by the members· of the defendant's associations of a provision in their constitution will infringe any right of the plaintiff.

The case was heard in the Common Pleas Court on the plaintiff's motion for judgment on the pleadings. These pleadings consisted of the plaintiff's petition, an amendment thereto, and the defendant's answer. The issue has .been presented in the same way in this court. We look, therefore, to the answer for the admissions, express or implied, for the factual basis of our decision.

One of the defendants is a corporation not for profit, the members of which are painters, decorators, and paper hangers. Its membership is organized into subordinate local bodies known as "local district councils." The other defendant is one of these subordinate bodies located in Cincinnati, Ohio. The membership is national in scope. Among the purposes stated in its constitution, are "the regulation of wages, hours and condition of service," and "the cultivation of friendship among the members of the association," and, also, generally "their mutual protection and benefit."

On or about April 1, 1939, the plaintiff entered into an agreement with the subordinate body located in Cincinnati, committing itself "to pay to its employees, members of the defendant, wages at the rate of $1.35 per hour for work done by said employees in the Cincinnati district of Council No. 12, and further agreed to employ members of the defendant exclusively throughout the term of said contract on all of its work."

The plaintiff, at the time it entered into this agreement, knew that there was a provision in the defendant's constitution to the effect that where a contractor is engaged in work outside his home city or town, and a different wage rate prevails at the place where the work is being done than at the contractor's home city or town, the members of the defendant are required to demand the higher wage and to refuse to work unless the demand is complied with.

The plaintiff has contracts to do work requiring the services of painters and decorators in various parts of the United States, where the prevailing rate for local members of the defendant association is lower than the rate in Cincinnati.

It is the purpose of the plaintiff to take certain members, within the quota prescribed by the defendant's constitution, from the Cincinnati district and pay them according to the rate in the Cincinnati district, but object to the rule prescribing that under such circumstances, the Cincinnati rate, which is the higher rate, shall be the uniform rate for all painters and decorators. engaged in the performance of that contract.

The plaintiff prays that the court declare that this provision of the defendant's constitution is void, in that it imposes an unlawful restraint upon trade, violates the Valentine Anti-Trust Law (§6391 et seq, GC), and, therefore, in addition to violating the rights of the public, also infringes the private rights of the plaintiff, entitling the plaintiff to injunctive relief against the threatened injury.

Now is the plaintiff's premise sound?

1. Clearly, in the absence of a statute, an individual painter or decorator has full liberty to contract for his services. This liberty is as broad as that of the plaintiff to accomplish a specified task as an independent contractor. The liberty of the one in no way narrows the liberty of the other, but the status created by the exercise of that liberty by either must be respected by the other. Senn v Tile Layers Protective Union et al, 301 U. S. 468. This is saying no more than that in an organized society there is no such thing as unrestrained liberty. Regard must be had for the equal liberty of the other members of society. It is within the meshes of correlative rights that each must find the ordered liberty of the Constitution and the law. There is not and never was under the common law the right of trade and commerce in disregard of the right of others to pursue other activities. Speaking of the equal rights of employer and employee, the court in Senn v Tile Layers Protective Union, et al, supra, said at p. 481, et seq.;

"There is nothing in the Federal Constitution which forbids unions from competing with non-union concerns for customers by means of picketing as freely as one merchant competes with another by means of advertisements in the press, by circulars, or by his window display. Each member of the unions, as well as Senn, has the right to strive to

earn his living. Senn seeks to do so through exercise of his individual skill and planning. The union members seek to do so through combination. Earning a living is dependent upon securing work; and securing work is dependent upon public favor. To win the patronage of the public each may strive by legal means. Exercising its police power, Wisconsin has declared that in a labor dispute peaceful picketing and truthful publicity are means legal for unions. It is true that disclosure of the facts of the labor dispute may be annoying to Senn even if the method and means employed in giving the publicity are inherently unobjectionable. But such annoyance, like that often suffered from publicity in other connections, is not an invasion of the liberty guaranteed by the Constitution. Compare Pennsylvania Railroad Co. v United States Railroad Labor Board, 261 U. S., 72. It is true, also, that disclosure of the facts may prevent Senn from securing jobs which he hoped to get. But a hoped-for job is not property guaranteed by the Constitution. And the diversion of it to a competitor is not an invasion of a constitutional right."

Each was pursuing a lawful object. The plaintiff engaging to accomplish the ultimate object of painting and decorating buildings was pursuing a purpose recognized as beneficial to society. The defendant in doing the actual work of painting and decorating certainly was performing a service equally beneficial to society and meritorious. While performing these services desired by society as a whole, each was actuated by the additional motive or purpose of securing a resulting benefit to themselves. When kept within reasonable limits, this somewhat selfish purpose is also beneficial to society. It is a lawful purpose. Therefore, each in pursuit of it violated no law and no right of the other, unless the combination of two or more individuals transforms that which when done separately was lawful, from a lawful into an unlawful purpose. We know of no rule of law or morals which would pro-

duce this change. The plaintiff and the defendant are both corporations. The plaintiff's stockholders saw virtue in the combination of capital of many in pursuing its object, which was the performance of service beneficial to the public with a resultant net profit to them. The defendant's members considered that by combining their labor, greater benefit would result to the public, with a resultant higher wage to them. In following these purposes, neither the plaintiff nor the defendants was engaged in restraining the other, although what one did might affect indirectly the other just as the lawful conduct of every member of society affects every other. That is the result of living in an organized society. The individual in the social order can not be so insulated as not be be affected at all by other units in that organism. The law makes no attempt to accomplish any such insulation. The mutual effect of the interplay of the normal actions of the members of society is the purpose of the social order. It is only the abnormal action that is proscribed. Unless there is some abnormal action the effect upon others is the price of living in the social order.

We must look, therefore, for some abnormal conduct and the norm is determined by the law. In a combination of two or more persons, the law could only denounce it either because of the ultimate purpose of the combination, or because of the method of accomplishing the ultimate object.

In New Jersey Painting Co. v Local Union No. 26, 96 N. J. Eq., 632, in which the defendant was the same association that is defendant in the case at bar, the court said at pages 639 and 640:

"An accurate and lucid statement of the rule to be applied was made by Chief Justice Taft, when sitting as a circuit judge, in the case of Toledo, etc., Railroad Co. v Pennsylvania Co., 54 Fed. Rep. 746; 19 L. R. A. 387, 392: 'Ordinarily, when such a combination of persons does not use violence, actual or threatened, to accomplish their purpose, it is difficult to point out with

clearness the illegal means or end which makes the combination an unlawful conspiracy; for it is generally lawful for the combiners to withdraw their intercourse and its benefits from any person and to announce their intention of doing so, and it is equally lawful for the others, of their own motion, to do that, which the combiners seek to compel them to do.'

"None of these cases, however, nor any of the cases which we have found and examined, decide the precise point involved in the record of this case. There is a wealth of learning and many cases in the books on this general topic. Some of the more recent illustrative and important ones are the following: Saulsbury v Coopers' International Union, 147 Ky. 170; Karges Furniture Co. v Amalgamated Woodworkers' Local Union, 165 Ind., 421, 428; Gray v Building Trades Council, 91 Minn. 171; Lohse Patent Door Co. v Fuelle, 215 Mo. 421; Minasian v Osborne, 210 Mass. 250; Pickett v Walsh, 192 Mass. 572; Bossert v Dhuy, 221 N. Y. 342; State v Stockford, 77 Conn. 227; Hitchman Coal etc. Co. v Mitchell, 245 U. S. 229; 12 Corp. Jur. 570; 16 R. C. L. 430, Sections 13, 14; 24 Cyc. 819 c; Eddy Trade Commission.

"The above cases, and nearly all the cases in this country, quite uniformly hold, and the complainant seems to concede, that the union may arbitrarily fix a uniform scale of wage applicable to all its members and strike to enforce its demands, i. e., either to maintain or advance a scale of wages; and the strike will not be interfered with by the courts if it is lawfully carried on. Bossert v Dhuy, **supra.** But the argument by the complainant, followed by the learned vice-chancellor in this case, seems to be based upon the idea that the union can not in good faith frame or adopt a rule providing for a sliding scale of wages to fit ostensibly the varying local economic conditions throughout the United States, which in effect, does discriminate against some employers as a class in the matter of wages to be paid. It seems to be based upon the ground that such regulations create an unfair re-

straint of trade. The attack is aimed, not at the combination, but at its effect upon the employers. This is unsound, both legally and economically. In the last analysis the prime object of the rule attacked is to establish a standard of wages. It is hardly necessary to enter into any extended discussion pointing out that in law or by analogy Article IV, Section 2, and Article XIV, Section 1 of the Constitution of the United States are not applicable to private contracts. These sections are directed against state action only. United States v Harris, 106 U. S. 643. Economically, the conclusion reached by the lower court confuses the possible or probable effect of the defendants' action upon the employers with the defendants' rights. The law gives the defendants a right to sell their labor to whom they please, when and under such conditions as they may fix, individually or in combination. They may make rules and regulations, passed in good faith, providing for what they deem to be an economic advantage to themselves. If, in the enforcement of such rules and regulations, they violate no law, but act solely for the declared purpose, the courts ought not and can not legally enjoin them from such concerted action, simply because such action may affect some employers. How can it be said that such rules and regulations create an unfair restraint of trade? If the law gives the workers such rights, it must protect them in their employment. They can not be enjoined from their use or interfered with by the courts. Employers have no vested interest in the labor of workers."

These principles have been applied to the clashing economic interests of employers and this defendant brotherhood in these additional cases: Barker Painting Co. v Local No. 734 Brotherhood of Painters, 12 Fed. (2d) 945; Same v Same, 15 Fed. (2d) 16; Same v Same, 23 Fed. (2d) 743, all being cases in which the legality of Section 133 was assailed. In these cases, the courts have upheld the right of the painters,

decorators, and paper hangers to combine and govern their conduct by the rule assailed here as against the assertion of employers that such action curtailed their freedom to pursue their business. In Barker Painting Co. v Brotherhood of Painters, etc., 15 Fed. (2d), 16, at 17, the court said:

"The courts in the latter cases restate what is now settled law, that employers have no vested interest in the labor of workers and that their workers have a right, individually and collectively, to lay down terms on which they will sell their labor for the highest return they can obtain, and when not satisfied, they have a right to strike. So long as they do this in their own interest, not with the purpose of assailing others, and do it in a manner not in itself unlawful, the courts will not interfere."

2. But, it is said that the statute has prohibited such combination in the public interest.

The Valentine Anti-Trust Act (§6390, et seq., GC) condemns only combinations having for their purpose restraints on trade or commerce. There is no express prohibition of association to fix or standardize wages. All the specific prohibitions are against combinations relating to merchandise, commodities, and articles of trade. Unless an agreement among painters, on the subject of wages, comes within the meaning of "restriction on trade," the statute· does not apply.

It is said that the Ohio statute has the same meaning as the original Sherman Anti-Trust Law, and that that statute was construed to prevent combinations of employes to fix wages. Loewe v Lawler, 208 U. S. 274, and International Harvester Co. v Missouri, 234 U. S. 199 are cited as supporting that construction.

We do not understand either of those decisions to have so decided. Loewe v Lawler decided that the lawful union of the hatters had engaged in unlawful acts—intimidation and coercion—

during a strike, directed ·against the employer, whereby restraint was placed upon interstate commerce in which he was engaged. There was no denunciation of the union on the ground that it had agreed upon a wage scale. International Harvester v Missouri involved the Missouri anti-trust law, which did not expressly exempt labor ·unions, but which the state Supreme Court held were not embraced because the statute was directed against dealers in commodities "and do not include combinations of persons engaged in labor pursuits." It was contended that the statute so construed provided for an unjustified classification, was unreasonable, and discriminatory, and, therefore, violative of the equal protection provision of the 14th Amendment of the Constitution. The court sustained the statute in the face of this contention.

In 19 R. C. L., 191, it is said:

"It is, however, the undoubted right of artisans laborers, or professional men voluntarily to unite for their own improvement or advancement or for any other lawful purpose, and as a general proposition, combination among laborers for any beneficial purpose, including the securing of higher wages, is not unlawful at common law, at least, as applied in this country and by the later English cases; nor will statutes enacted to prohibit pools and trusts be held to apply to ·combinations to fix the wages for labor or other personal services, unless it clearly appears that such was the legislative intent."

In order to remove whatever doubt there might exist on the subject, Congress, by the Clayton Act, declared that the Sherman Act should not be construed to forbid the existence or operation of labor unions. The act in its original form did not, of course, outlaw labor unions. In this respect, the legislative interpretation, placed upon it in the Clayton Act, conformed to the plain meaning of the terms of the original act and the construction placed upon it by the courts. This part of the Clayton

Act was no more than a preliminary statement to the subsequent provisions restricting the power of the Federal Courts to grant injunctions in disputes between employes and employers. In Duplex Printing Press Co. v Deering, 254 U. S. 443, 16 A. L. R., 196, the court said at 205 of the latter report:

"The section assumes the normal objects of a labor organization to be legitimate, and declares that nothing in the Anti-Trust Laws shall be construed to forbid the existence and operation of such organizations, or to forbid their members from lawfully carrying out their legitimate objects; and that such an organization shall not be held in itself—merely because of its existence and operation—to be an illegal combination or conspiracy in restraint of trade."

And the more recent decisions have construed the Sherman Act, as applied to combinations of capital, so as to limit its denunciation to those combinations that unduly restrain trade or commerce. The statute is now construed according to the "rule of reason" and to prohibit combinations that are intended to directly restrain trade or commerce, or which necessarily have that effect, and excludes combinations for another and lawful purpose which only incidentally and indirectly impose such restraint. Such is the character of the restraint upon trade or commerce of this association of employes.

In Standard Oil Co. v United States, 221 U. S. 1, at 66, the court said:

"If the criterion by which it is to be determined in all cases whether every contract, combination, etc., is a restraint of trade within the intendment of the law, is the direct or indirect effect of the acts involved, then of course the rule of reason becomes the guide, and the construction which we have given the statute, instead of being refuted by the cases relied upon, is by those cases demonstrated to be correct. This is true, because as the construction which we have deduced from the history of the act and the analysis of its text is simply that in every case where it is claimed that an act or acts are in violation of the statute the rule of reason, in the light of the principles of law and the public policy which the act embodies, must be applied. From this it follows, since that rule and the result of the test as to direct or indirect, in their ultimate aspect, come to one and the same thing, that the difference between the two is therefore only that which obtains between things which do not differ at all."

This rule, for the interpretation of anti-trust statutes, was approved and applied to the Valentine Anti-Trust Act in **List v Tobacco Growers' Co-operative Assn., 114 Oh St 361**, the 4th paragraph of the syllabus of which is:

"Contracts in restraint of trade are not illegal except when unreasonable in character. When such contracts are incident and ancillary to some lawful business and are not unreasonable in their scope and operation they are not illegal."

The plaintiff asks the court to declare that the mere existence and operation of the defendant brotherhood under the provisions of its constitution relating to wages is unlawful, without regard to the methods pursued in the accomplishment of that object. It is entirely manifest that the intention of the defendants was not to restrain trade, but to associate themselves in a voluntary organization, terminable at the will of any member, and thereby gain the strength resulting from unity in their negotiations with employers on the subject of wages, hours of service, and general working conditions. These are lawful objects and a combination to accomplish them should not be denounced as contrary to public policy. They violate no statute.

For these reasons, the court finds that the construction contended for by the plaintiff is not supported by the law,

and that a judgment may be entered declaring that the provision of the defendants brotherhood's constitution is lawful.

HAMILTON, PJ., concurs.

ROSS, J., concurring: I find the provision in question violates no legal right of the plaintiff.