DYK, Circuit Judge,
concurring in part and dissenting in part.
I join the majority opinion except for Part III, from which I respectfully dissent. Scruggs argues that Monsanto’s grower license agreements between 1996 and 1998 unlawfully tied the purchase of Roundup herbicide to the purchase of Roundup ready seeds, and that this constituted patent misuse, rendering the patent unenforceable. The district court rejected this argument. In Part III, the majority also rejects this contention, on the ground that the agreements, in essence, merely enforced then-existing EPA regulations. See Ante at 1339. With respect, I think that the district court’s decision in this respect, approved by the majority, is contrary to Supreme Court precedent.
I
As a condition on the purchase of Roundup Ready seeds between 1996 and 1998, Monsanto required that growers execute a licensing agreement containing the following (or similar) language. “You [the grower] agree: ... [i]f a herbicide containing the same active ingredient as Roundup Ultra™ herbicide [glyphosate] (or one with a similar mode of action) is used over the top of Roundup Ready crops, you agree to use only Roundup® branded herbicide.” J.A. at 309. Scruggs claims that this provision unlawfully tied the sale of Roundup brand glyphosate herbicides to the sale of Roundup Ready seeds.[1]
The district court held, and Monsanto agrees, that the provision was justified by the fact that Roundup was the only gly-phosate herbicide approved by the EPA at that time for use “over the top” of crops. The district court concluded that “[because Roundup was the only product labeled for use ‘over-the-top’ of Roundup Ready crops between 1996 and 1998, it was the only EPA-approved herbicide that could be used on Roundup Ready crops during that periodí,]” and thus that the “defendants ... failed to meet their burden of producing significant probative evidence that Monsanto forced farmers who wanted to purchase Roundup Ready seeds to purchase Roundup as well.” Monsanto *1343 Co. v. Scruggs, 342 F.Supp.2d 568, 577 (N.D.Miss.2004). The .majority agrees. Ante at 1339. I read the Supreme Court cases as to the contrary.
The Supreme Court has unequivocally held: “That a particular practice may be unlawful is not, in itself, a sufficient justification for collusion among competitors to prevent it.” Fed. Trade Comm’n v. Ind. Fed’n of Dentists, 476 U.S. 447, 465, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986).[2] While the Supreme Court has not directly addressed this issue in the context of tying arrangements, I see no basis for applying a different rule or for justifying otherwise per se unlawful tying arrangements as designed to prevent illegal conduct. Monsanto urges that these cases are distinguishable because the competitors there sought to enforce state law, whereas here the tying arrangement is designed to enforce federal law. I see no basis for such a distinction. This is not a case in which federal law pervasively regulates, compels, or permits the allegedly anticompetitive conduct, which might create an implied antitrust immunity. See Billing v. Credit Suisse First Bos. Ltd., 426 F.3d 130, 164-65 (2d Cir.2005).
II
Monsanto argues, however, that its licensing restrictions had no anticompetitive effect because the EPA regulations eliminated the possibility of competition in the market for glyphosate herbicides, the allegedly tied product. We faced a related contention in U.S. Philips Corp. v. International Trade Commission, 424 F.3d 1179 (Fed.Cir.2005), where Philips’ package patent licensing arrangements were challenged as impermissible ties. We held that the agreements were not per se unlawful, because there was no evidence of “commercially feasible” alternatives to the technology enabled by the allegedly tied patents in the relevant market. Thus “packaging those patents together with so-called essential patents can have no anti-competitive effect in the marketplace, because no competition for a viable alternative product is foreclosed.” Id. at 1194.[3]
This case is distinguishable. This is hot a situation in which there were no commercially feasible alternatives. There was evidence that manufacturers produced products that could have been used “over the top,” and that all that was lacking was regulatory approval. In other words, Monsanto’s tying arrangements here did no more than enforce a regulatory requirement. Substantial competitive risks inhere in such an arrangement. Potential competitors are potentially discouraged from seeking regulatory approval or attempting to have the regulation modified or eliminated. To the extent that such efforts are discouraged, the proponent of the tie has succeeded in eliminating competition.
*1344 Moreover, in this connection it is highly significant that Monsanto’s grower license agreements did not simply require the use of a government-approved herbicide; they explicitly required the use of “Roundup branded herbicide.” A potential herbicide competitor thus would be concerned that, even if it secured government approval of its product, use of the approved herbicide would still be barred under the contracts. The elimination of such potential competition is not permissible under the antitrust laws.
Ill
The district court did not make a finding as to Monsanto’s market power in the alleged tying product. Ill. Tool Works, Inc. v. Indep. Ink, Inc., — U.S. -, 126 S.Ct. 1281, 1293, 164 L.Ed.2d 26 (2006); see Monsanto Co., 342 F.Supp.2d at 575-80. I would vacate the judgment as to the alleged tie in the 1996-1998 grower agreements, and remand for the district court to determine whether the relevant contract provision in fact constituted patent misuse and, if misuse occurred, whether it was purged. See Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 668 n. 10 (Fed.Cir.1986).

. The majority agrees that the patent misuse defense does not require a showing of antitrust standing. Ante at 1339; see also 6 Chi-sum on Patents § 19.04[5], at 19-541 ("[I]t has been clear at least since Morton Salt that the individual defendant raising a [patent] misuse defense need not show that he was personally harmed by the abusive practice.”); 6 Chisum on Patents § 19.04[5] nn.3-4 (collecting cases). Thus, the fact that Scruggs did not execute a grower licensing agreement containing the Roundup restriction is of no moment.

. See Fashion Originators’ Guild of Am., Inc. v. Fed. Trade Comm’n, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949 (1941) ("[E]ven if copying [of the Guild members' designs] were an acknowledged tort under the law of every state, that situation would not justify petitioners in combining together to regulate and restrain interstate commerce in violation of federal law.”); see also Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 496, 69 S.Ct. 684, 93 L.Ed. 834 ("[W]e have declared that violations of antitrust laws could not be defended on the ground that a particular accused combination would not injure but would actually help manufacturers, laborers, retailers, consumers, or the public in general.”); Int’l Harvester Co. v. Missouri, 234 U.S. 199, 209, 34 S.Ct. 859, 58 L.Ed. 1276 (1914) ("It is too late in the day to assert against statutes which forbid combinations of competing companies that a particular combination was induced by good intentions.”).

. Even then the court held that the arrangements might violate the antitrust laws under a rule of reason analysis. Id. at 1197.