NEW JERSEY PAINTING COMPANY, complainant,

*v.*

LOCAL NO. 26, BROTHERHOOD OF PAINTERS, DECORATORS AND PAPER HANGERS OF AMERICA; BROTHERHOOD OF PAINTERS, DECORATORS AND PAPER HANGERS OF AMERICA, DISTRICT COUNCIL NO. 10; BROTHERHOOD OF PAINTERS, DECORATORS AND PAPER HANGERS OF AMERICA, and WILLIAM WYLIE and HERMAN LANDOW, defendants.

[Decided November 21st, 1923.]

1. The law casts upon a trades union the burden of justifying the enforcement of its laws by strike.

2. A union, after having set up wage scales for its members in their various localities which employers of labor must abide by, and reckon with, may not discriminate against employers in the matter of wages upon the ground that the employer is not local to the place of work.

3. A trade union's constitution, providing that where there is a difference in the wage scale of two cities, all members employed on a job in one of the two cities by an employer from another city shall receive the higher of the two wage scales, is in unlawful restraint of trade, and a strike based thereon will be enjoined.

On final hearing.

*Mr. Merritt Lane,* for the complainant.

*Mr. Henry Carless* and *Mr. Morris Hillquit* (of the New York bar), for the defendants.

BACKES, V. C.

This is a bill to enjoin a strike. The complainant made a contract to decorate Bamberger's store in Newark and for that purpose hired union men at Newark union wages, $8 a day. The local of the Painters' and Decorators' Union, claiming that the complainant is a New York concern, called a strike because the complainant refused to pay New York City union wages, $9 a day, as ordained by the national body of the union by an amendment to its constitution passed in September, 1921, which reads:

"Where there is a difference between the wage scales of two cities, all members employed upon a job done in one of the two cities by an employer from the other (whether sent from the city in which the employer's place of business is situated or hired in the city where the work is done) shall receive the higher of the two wage scales."

The law casts upon the union the burden of justifying the enforcement of its laws by strike. *Lehigh, &c., Co.* v. *Atlantic S. & R. Works, 92 N. J. Eq. 131.* None of the usual grounds for strike, such as wages, working conditions, the integrity of the union, strife for power in the industrial field and the like, all well recognized in law and upheld by the courts as lawful, is involved. The extra dollar a day wage is incidental and only to be accidentally *earned.* The reason for the amendment and the argument to support it is, in substance, that the better class of union workmen, as a rule, flock to the larger cities, where, because of their greater skill

and efficiency, their services command the higher union wage; that when they are sent to communities where a lower union wage prevails, the local, and perhaps less efficient worker, working at a lower union scale, becomes dissatisfied; that the difference in wages on the same job breeds discontent, and that, on the whole, the welfare of the union, not of the men, requires that under such circumstances the members be on a footing of equality of wage, whatever may be their qualification as artisans or their capacity or willingness to produce. Another law calls for the employment of at least fifty per cent. of local workmen. The assigned reason as a justification in law for the strike is manifestly without merit. In its self-serving pursuit the union entirely overlooked the effect of its action upon trade, and the consequences to the employers of labor. It cannot be denied that the union may arbitrarily fix a uniform scale of wage applicable to all its members, or that it may classify its members and arbitrarily fix a uniform scale based on qualification, or that it may localize such uniform scale, and strike to enforce its demands, however oppressive they may be, and the strike will not be interfered with by the courts if it is lawfully carried on. The reasonableness or unreasonableness of the demands would not be regarded as a justifiable question, but one to fought out by capital and labor by their own methods and with their own weapons. *National Protective Association* v. *Cumming, 170 N. Y. 315; Bossert* v. *Dhuy, 221 N. Y. 342; Gill Engraving Co.* v. *Doerr, 214 Fed. Rep. 111.* But it cannot be admitted that the union may, after having set up wage scales for its members in their various localities, and which employers of labor must abide by, and reckon with, discriminate against employers, in the matter of wages, based upon the illusory ground that the employer is not local to the place of work. Such discrimination would be in unfair restraint of trade, inimical to public welfare and in violation of public policy, and any attempt of the union to impose its will by the coersive means of strike would be an unwarranted and unlawful exercise of the power of might. The principle upon which the law interdicts such union activity has been often and clearly

expounded by the courts. The authorities are numerous and illustrative. Some of them are: *Gompers* v. *Buck Stove & R. Co., 221 U. S. 418; Berry* v. *Donovan, 188 Mass. 353; Pickett* v. *Walsh, 192 Mass. 572; Wilcutt & Sons* v. *Driscoll, 200 Mass. 110; Burnham* v. *Dowd, 217 Mass. 351; United Shoe Machinery Corp.* v. *Fitzgerald, 237 Mass. 537; Haverill Strand Theatre* v. *Gillen, 229 Mass. 413; L. R. A. 1918 C. 813; Grassi Contracting Co.* v. *Bennett, 160 N. Y. Supp. 279; Baldwin Lumber Co.* v. *International Brotherhood, &c., 91 N. J. Eq. 240; Currier & Sons* v. *International Molders' Union, 93 N. J. Eq. 61; Lehigh Co.* v. *Atlantic S. & R. Works, supra.* That the operation of the amendment would be in unlawful restrain of trade is too obvious to require extended discussion. Its effect would be practically to bar a foreign contractor, ruled as he is by the higher union wage scale at his place of business, from successfully competing with a local contractor, for, in bidding, he would necessarily have to estimate on the basis of his home wage scale as against the local contractor's bid at the local and lower scale. This, manifestly, would destroy fair and honest competition. In the instant case it operates to the injury of a citizen of another state, and the union seeks to do, in effect, what the states are forbidden to do by the United States constitution. Article 4, section 2 of that instrument provides that: "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." The meaning and widespread force of this article is laid down in *Paul* v. *Virginia, 8 Wall. 168,* and by Mr. Justice Pitney in *Travis* v. *Yale and Towne Manufacturing Co., 252 U. S. 60, 78.* In *Ward* v. *Maryland, 12 Wall. 418,* the supreme court held that it was to encourage commerce between citizens of the state of the union, and deeclared void as unconstitutional the act of Maryland, imposing a higher tax on traders from other states than that imposed upon resident traders. While it may be that this constitutional limitation is binding only upon the states in their sovereign capacity (*United States* v. *Morris, 125 Fed. Rep. 322*), it is nevertheless declaratory of public policy, interstate as well as intrastate, and it would seem

that if a state of the union cannot do what a nation-wide labor union seeks to do—discriminate between citizens of the states in their privileges and immunities—that such discrimination is unwholesome to state and nation and condemnable in law.

Diversity of citizenship in the instant case is only called into play to emphasize my view. The amendment would be just as vicious, and not an iota less harmful to the public, were its operations confined to state lines if different wage scales exist in different communities. The extent, not the character, of the wrong would be modified.

My conclusion is that the strike is for an unlawful purpose and an injunction will issue.