BARKER PAINTING CO. v. LOCAL NO. 734, BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPER HANGERS OF AMERICA, et al.

(District Court, D. New Jersey. April 13, 1926.)

1. Constitutional law ⬄206(4)—Labor union rule that nonresident contractor must pay highest wage in either of two towns, applying to everybody, regardless of state residence, held not unlawful discrimination.

Labor union rule that wages paid by employer, resident of different town from where work was being done, should be at highest rate in force in either of two towns, applying to everybody, regardless of state residence, *held* not an unlawful discrimination, in violation of constitutional right of every citizen to enjoy privileges and immunities of citizens in the several states.

2. Trade unions ⬄3—Labor union rule that nonresident contractor must pay highest wages in force at town where he resides, or where work is done, held not to make improper classification.

Labor union rule, requiring nonresident contractor to pay highest wage applying either in city where work is done or in town where he resides, *held* within rule that classification must rest on some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without such basis.

3. Trade unions ⬄3—Labor union rule, requiring nonresident contractor to pay highest wage in force either in city where work is done or where employer lives, held lawful, as equalizing wages of workmen (Act N. J. Feb. 14, 1883 [P. L. p. 36], being 3 Comp. St. N. J. 1910, p. 3051, § 128).

As labor union rule, requiring nonresident contractor to pay highest rate of wages either at town where he resides or place where work is done, equalizes wages of workman, object and effect of rule are lawful, in view of Act N. J. Feb. 14, 1883 (P. L. p. 36), being 3 Comp. St. N. J. 1910, p. 3051, § 128, and hence enforcement cannot be enjoined.

In Equity. Suit for injunction by the Barker Painting Company against Local No. 734, Brotherhood of Painters, Decorators, and Paper Hangers of America, and others. On motion for injunction, etc. Temporary injunction dissolved.

Merritt Lane, of Newark, N. J., for complainant and the motion.

Henry Carless, of Newark, N. J., for defendants, opposed.

RUNYON, District Judge. The complainant, Barker Painting Company, having its main office in New York City, is a corporation engaged in the painting industry, and for years has accepted and executed contracts in many localities situate throughout the eastern part of the United States. The defendant the Brotherhood of Painters, Decorators, and Paper Hangers of America is a national labor union composed of workers engaged in the various branches of the painting and paper-hanging industry, and as an organization is made up of local unions, approximately 1,250 in number, located in all sections of the United States and Canada. Local No. 734 is one of such local unions of the national Brotherhood, and represents the organized painters and decorators of the town of Somerville, N. J., and vicinity. George W. Hoffman and Harry S. Warren are, respectively, local business agent and general organizer connected with the Brotherhood.

The situation confronting the court is the result of a contract secured by the complainant for the painting of the Somerset Hospital, at Somerville, N. J., and in the performance of which it was engaged when its workmen, who were all union men and receiving wages at the union rate obtaining in Somerville and vicinity, were informed by local representatives of the Brotherhood that their continued work at that rate constituted a violation of the Brotherhood's rules. In consequence of the information thus imparted, the members of Local No. 734, after making demand for the rate contemplated in the rule and being refused, withdrew from their labors and progress was brought to a halt, a situation which continued until a temporary injunction against the defendants was obtained from this court, resulting in the resumption of work on the contract. The present application aims to secure eventually a final and authoritative ruling as to whether or not the defendants, as a matter of public policy, are within their constitutional rights in attempting to enforce the rules which are here involved, by the imposition of penalties upon members for disobedience, to which system the members voluntarily submit themselves.

In the year 1921, at its convention held at Dallas, Tex., the Brotherhood of Painters, Decorators, and Paper Hangers proposed an amendment to its constitution, which was subsequently ratified by the membership and incorporated in said constitution as section 62. This amendment, or rule, as it is called by the membership, reads as follows: "Where there is a difference between the wage scale of two cities all members employed upon a job done in one of the two cities by an employer from the other (whether sent from the city in which the employer's place of business is situated or hired in the city where the work is done) shall receive the higher of the two wage scales." This rule was supplemented by another rule, which provides that upon any job done by an outside employer at least 50 per cent. of the employees engaged on such job shall be hired from the locality in which it is being performed.

At the time the contract herein was made, the prevailing scale of painters' wages in Somerville and vicinity was $8 for an eight-hour day, and in the city of New York $10.50 for an eight-hour day, and it was in view of the provisions of said rule above quoted, and because of the refusal of the complainant herein to pay the higher, or New York, rate, that the workers, who were practically all local men, members of Local 734, and coming from the vicinity of Somerville, discontinued their work.

The present litigation is in all respects the counterpart of another action instituted in the Court of Chancery of New Jersey, wherein the New Jersey Painting Company was complainant and the present Brotherhood, its Local No. 26 of Newark, N. J., and others, were defendants (122 A. 622, 95 N. J. Eq. 108), and which action eventually reached and was disposed of by the New Jersey Court of Errors and Appeals (126 A. 399, 96 N. J. Eq. 632); the question at issue being in substance identical with the present one. The original hearing in said case was had before Vice Chancellor Backes, who decided that the strike in said matter was called in furtherance of an unlawful purpose, the same being in effect to "discriminate against employers in the matter of wages, based upon the illusory ground that the employer is not local to the place of work, * * * in unfair restraint of trade, inimical to public welfare, and in violation of public policy," further holding that "any attempt of the union to impose its will by the coercive means of strike would be an unwarranted and unlawful exercise of the power of might."

The injunction prayed for was granted by the learned Vice Chancellor, and from his decision the defendants carried their appeal to the Court of Errors and Appeals, which

court adopted an essentially different view from that of the Vice Chancellor and, speaking through Mr. Justice Black, reversed the Chancery Court's decree. Because of its illuminating nature, and also because it is the utterance of the court of last resort in New Jersey, I have taken the liberty of quoting somewhat generous excerpts from this opinion, as follows:

"The meritorious question involved in this case is a controversy between an employer and organized labor. The bill of complaint filed contains a prayer for an injunction against the defendants from ordering, advising, encouraging, participating in, persuading, contributing money or advice to any strike or cessation of work of any of complainant's employees. Also, from suggesting to any person or persons, including members of said union, that they should refrain from being employed by the complainant. The bill of complaint specifically charges that in the month of January, 1922, at a convention of the International Painters and Paper Hangers, held at Dallas, Texas, the convention passed a rule that, where a contractor took work away from his home town, he should pay the rate of wages and observe the union conditions prevailing in his home town, if that rate of wages or working conditions were more favorable to the workman than the union scale prevailing in the district in which the work was to be done, otherwise he should pay the union scale and observe the union conditions prevailing in the place in which the work was to be done. It is further alleged that such a rule is illegal and violative of the Constitutional right of employers of labor, in that it creates an illegal and unjust discrimination. It has, so it is alleged, the effect of making it more expensive for the person not living in the particular district to do work therein. * * *

"The decree follows closely the prayer of the bill and grants the restraint prayed for, without specifically mentioning the Bamberger job. It restrains the defendants from doing any acts or things in an attempt to enforce the provisions of the rule of the said union referred to in the bill of complaint. The grounds upon which the decree was advised by the learned Vice Chancellor are, that such discrimination in the scale of wages is an unfair restraint of trade, inimical to the public welfare and in violation of public policy; that the operation of such rules and regulations by the union is illegal and the strike is for an unlawful purpose. There is substantially no dispute about the facts. So, the whole problem for solution may be stated in a single sentence. Is such a rule of the defendants legal; and, if so, may it be enforced by penalties imposed upon its members for disobedience, which they submit to voluntarily, without violating the law? Thus, it will be seen, that the question involved is much narrower in its scope and quite clearly distinguished from any of the adjudged cases that we have examined or cited involving labor disputes. * * *

"In 1883 the Legislature of New Jersey passed an act which provides (1) 'that it shall not be unlawful for any two or more persons to unite, combine or bind themselves by oath, covenant, agreement, alliance or otherwise, to persuade, advise or encourage, by peaceable means, any person or persons to enter into any combination for or against leaving or entering into the employment of any person, persons or corporation.' P. L. 1883, p. 36; 3 Comp. St. N. J. p. 3051, § 128. This statute was referred to by this court in the case of Jonas Glass Co. v. Glass Bottle Blowers' Asso. [79 A. 262] 77 N. J. Eq. 219 [41 L. R. A. (N. S.) 445], thus: 'The act of 1883 is properly to be treated as merely rendering the combination no longer indictable; in effect, as repealing the rule laid down by the Supreme Court of this state in the case of State v. Donaldson, 32 N. J. Law, 151 [90 Am. Dec. 649].' This statement was unnecessary to the decision of that case. It was mere dictum. The basis, if not an exact copy of that statement, was an oral deliverance by Vice Chancellor Pitney, in the case of Frank & Dugan v. Herold [52 A. 152] 63 N. J. Eq. 447. The statute is much broader in its scope than the above statement of dictum would seem to indicate.

"This statute has been under consideration in the Court of Chancery, in several cases; thus, by Vice Chancellor Green in the case of Mayer v. Journeymen Stonecutters' Asso. [20 A. 496] 47 N. J. Eq. 531, where the learned Vice Chancellor said: 'So long as they [i. e., the workers] confine themselves to peaceable means to effect these ends [i. e., the control of the work connected with their trade], they are within the letter and spirit of the law, and not subject to the interference of the courts.' Barr v. Essex Trades Council [30 A. 881] 53 N. J. Eq. 119. This case was cited with approval by the Supreme Court of Missouri in Lohse Patent Door Co. v. Fuelle [114 S. W. 997] 215 Mo. 457 [22 L. R. A. (N. S.) 607,

128 Am. St. Rep. 492]. This statute left still subject to the inhibition of law every other illegal combination, except these mentioned in the statute. So, in the case of Cumberland Glass Manufacturing Co. v. Glass Bottle Blowers' Asso. [46 A. 209] 59 N. J. Eq. 53, Vice Chancellor Reed said: 'By its terms (i. e., the statute) it is lawful for the workmen to combine to persuade, by peaceable means, any person or persons to enter into any combination for the leaving or entering into the employment of any person or persons or corporation. The words employed by the statute cover a combination for the purpose of persuading others to combine, for the purpose of entering or leaving an employment. According to the act, the means adopted must be peaceable.' Jersey City Printing Co. v. Cassidy [53 A. 230] 63 N. J. Eq. 762; Baldwin Lumber Co. v. Local No. 560 [109 A. 147] 91 N. J. Eq. 240. * * *

"The mere combination of action is not the element which gives an illegal character to the act. It is the illegality of the purpose to be accomplished, or the illegal means used separately or in furtherance of the purpose, which makes the act illegal. Lindsay & Co. v. Montana Federation of Labor [96 P. 127] 37 Mont. 264, 273, 18 L. R. A. (N. S.) 707 [127 Am. St. Rep. 722]; Vegelahn v. Guntner [44 N. E. 1077] 167 Mass. 92, 98 [35 L. R. A. 722, 57 Am. St. Rep. 443]; 16 L. R. A. (N. S.) note 85. The rule adopted and promulgated by the defendants is not aimed at and does not apply to the complainant solely. It does not seek to establish arbitrary discriminations between one person or corporation and another. It applies to all employing painters within the whole territory of the United States who undertake to do work outside of their home districts It applies to all alike, automatically, who come within the prescribed rule. Co-operation in some form now seems to be an economic necessity in all business, trade and occupations throughout the United States, if not throughout the entire world. * * *

"Nearly all the cases in this country quite uniformly hold, and the complainant seems to concede, that the union may arbitrarily fix a uniform scale of wage applicable to all its members and strike to enforce its demands, i. e., either to maintain or advance a scale of wages, and the strike will not be interfered with by the courts if it is lawfully carried on. Bossert v. Dhuy [117 N. E. 582] 221 N. Y. 342 [Ann. Cas. 1918D,

661]. But the argument by the complainant, followed by the learned Vice Chancellor in this case, seems to be based upon the idea that the union cannot in good faith frame or adopt a rule providing for a sliding scale of wages to fit ostensibly the varying local economic conditions throughout the United States, which, in effect, does discriminate against some employers as a class in the matter of wages to be paid. It seems to be based upon the ground that such regulations create an unfair restraint of trade. The attack is aimed, not at the combination, but at its effect upon the employers. This is unsound, both legally and economically. In the last analysis the prime object of the rule attacked is to establish a standard of wages. It is hardly necessary to enter into any extended discussion, pointing out that in law or by analogy Article 4, § 2, and Article 14, § 1, of the Constitution of the United States are not applicable to private contracts. These sections are directed against state action only. United States v. Harris [1 S. Ct. 601] 106 U. S. 643 [27 L. Ed. 290].

"Economically, the conclusion reached by the lower court confuses the possible or probable effect of the defendants' action upon the employers with the defendants' rights. The law gives the defendants a right to sell their labor to whom they please, when and under such conditions as they may fix, individually or in combination. They may make rules and regulations, passed in good faith, providing for what they deem to be an economic advantage to themselves. If, in the enforcement of such rules and regulations, they violate no law, but act solely for the declared purpose, the courts ought not and cannot legally enjoin them from such concerted action, simply because such action may affect some employers. How can it be said that such rules and regulations create an unfair restraint of trade? If the law gives the workers such rights, it must protect them in their enjoyment. They cannot be enjoined from their use or interfered with by the courts. Employers have no vested interest in the labor of workers. We think the defendants, by the terms of the Statute of 1883, both its letter and spirit, are within its protection. They are also within the protection of the law as declared in the cases cited. The cases, in which concerted action on the part of a body of workers has been held unlawful, have invariably been such, in which either the object sought to be attained had little or

no bearing on the interest of the workers or in which the methods employed by them were in themselves unlawful."

In reviewing this opinion, counsel for the petitioner in the instant case contends that the combination itself constitutes the offense complained of; that while each individual member of the union, if acting alone, had and has an indisputable right to stop work, and all because his employer, coming from a higher jurisdiction, wherein higher wages are paid, refuses to pay him that higher rate, yet the concerted action of the same individuals, seeking the same advantage for the same cause, and producing the same effect, constitutes, of itself, an offense, in that such combination takes the situation out of the domain of the privilege which is each man's inalienable right, and into the domain of relative rights wherein the employer, the workers, and the public are parties.

If the entire transaction, as instituted by each individual member and carried to the point of actual cessation of work, is neither inherently bad nor constitutes an offense, if such transaction, duplicated a hundred times by that number of individuals, constitutes no such offense, it follows that the offense herein, if any there be, lies neither in the ultimatum of the individual worker, nor in his withdrawal from his work, nor in the hundred other duplications of such procedure, nor in having, through such means, brought the employer's business to a standstill, a disastrous standstill, perhaps, but must arise from the fact that these individuals have not acted, each for himself, but collectively, and as members of an organization.

And even so, the trend of modern economic usage, both as practiced and as given expression in the courts, is increasingly against regarding combinations among laborers as unlawful per se, but narrows its condemnation to those combinations which are formed for the purpose of effecting an unlawful object, or the doing of a distinct injury to one against whom the activities of the combination may be directed. "Courts differ as to what constitutes a boycott that may be enjoined. All hold that there must be a conspiracy causing irreparable damage to the business or property of the complainant." Gompers v. Buck's Stove & Range Co., 31 S. Ct. 496, 221 U. S. 437 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874).

Assuming, therefore, that a combination is not unlawful per se, inquiry must be directed to the ascertainment of the objects of the present combination, and the mode and method adopted in putting such objects into practice, whether or not they be lawful, and also to the effect thereby produced. There are divers objects sought in the organization of labor—the betterment of general working conditions, the adoption of proper safety appliances, workmen's compensation in cases of injury and death, hours of labor, etc.; and by no means the least of these objects is that one which deals with wages.

A reading of the rule adopted at Dallas furnishes ample proof that, in the minds of those who framed its terms, there was one main plan—that of increasing wages under certain conditions therein named. Whatever dispute there may be regarding these conditions, the fact must remain that there was in contemplation their utilization as a basis for wage increase.

By itself, the quest for increased wages is a lawful object, and therefore, if in the present case, in connection with the object of securing increased wages there appears that which is unlawful, it is to be found in one or more of the following factors, either in the residential feature of the rule, or in the methods adopted in the attainment of the object, or in the effect which such attainment has produced. The record herein is barren of any showing of intimidation, violence, or disorder of any sort on the part of those who ceased work, or of those representatives of the union at whose instance the demand for higher wages was made, and so this feature may safely be eliminated as in nowise having contributed to possible illegality.

With reference to the residential feature of the rule here involved, it has been urged in the dissenting opinion in the New Jersey Court of Errors and Appeals that an unlawful discrimination was thereby enforced because not founded upon any subject properly germane to the difference in wage scales involved, and that such discrimination is violation of the constitutional right of every citizen to enjoy all privileges and immunities of citizens in the several states.

[1] Had the rule in question drawn a specific line of demarcation, basing its operation avowedly upon differences in state citizenship, I can conceive that such differentiation would constitute an unlawful and forbidden discrimination; but as I read the rule, it is not subject to that interpretation, concerning itself in nowise with state

lines, but applying to anybody and everybody who essays to do business outside of his home city, whether it be in a neighboring town in his own state, or in some distant foreign jurisdiction. In other words, this rule applies with equal force and effect to everybody, regardless of state residence, who is similarly situated, and in such application, I take it, frees itself of the charge of effecting an unlawful discrimination.

[2] And while there may be wide differences of opinion regarding the logic involved in, or the soundness of, a rule wherein the home city of a contractor enters as a factor in the fixing of the wage scale, provided he is doing business in a locality where the rate of wages is less than in his home city, yet, even so, it can hardly be urged as a general proposition that the matter of residence is one not germane to the question of wages, since it is, in a real sense and under all ordinary conditions, the controlling factor. A contractor, living and doing business in a small town, pays his workers the union wage scale established for that town. Eventually, and of his own accord, moving his business and establishing it in a large city, he accepts the altered conditions and pays the identical staff of workers the enlarged rate of the metropolis, for with the change of his "home city" has come the consequent change in the stipend of his workers. Therefore I believe the basis of the rule here involved is not at all artificial, as may at first have appeared, but has both reason and custom to support it, and comes within the rules laid down in the following:

Classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." Gulf, Colorado & Santa Fé Ry. Co. v. Ellis, 17 S. Ct. 257, 165 U. S. 155, 41 L. Ed. 666. "While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis." Southern Ry. Co. v. Greene, 30 S. Ct. 291, 216 U. S. 417, 54 L. Ed. 536, 17 Ann. Cas. 1247.

[3] The natural effect of all of the foregoing is to equalize, at the higher rate, the wages of all workers employed under the conditions set out in the rule under review,

and thus, as it appears to me, the object and effect of the rule are lawful, as are also the foundation laid and the means relied on for its enforcement.

The case of Truax v. Corrigan, 42 S. Ct. 124, 257 U. S. 312, 66 L. Ed. 254, 27 A. L. R. 375, is strongly urged in support of the alleged illegality of the rule, both as to its provisions and its operation; but, as I read that case, it is far removed from the instant one. In that case the distinct object of the concerted action was to injure the plaintiff's business, in order that he might be forced to meet the defendant's demands, and the means adopted to cause that loss were little short of scandalous, consisting in part, as they did, of virulent attacks upon the character, not only of the plaintiff and his business, but also of those who patronized the plaintiff. The effect of this destructive campaign was ruinous to the plaintiff's business, and the Supreme Court holds that a state statute, which in practice denies legal relief in all forms, or, at the least, equitable or injunctive relief, under such circumstances, is defective, in that it fails to afford to all the equal protection of the laws.

The inequality in the operation of the statute was based upon the fact that it favored plaintiff's ex-employés, parties whose relationship with plaintiff had in reality ceased, in exempting them as parties to a labor dispute from the operation of a law made applicable to all others who might seek to destroy plaintiff's business and property, and in so doing proceed exactly as these ex-employés did. And while the actual facts and circumstances of this Truax Case remove it far from those of the case under consideration, making it, apparently, much more susceptible to attack from a conspiracy standpoint, it is significant of the strong tendency to uphold concerted action in labor disputes, that dissenting opinions were filed by three members of the court, Justices Holmes, Pitney, and Brandeis, Mr. Justice Clarke concurring in the opinion of Mr. Justice Pitney, and all to the effect that the Arizona judgment should have been affirmed.

Because of the foregoing, and because the New Jersey Court of Errors and Appeals, in the kindred case of New Jersey Painting Co. v. Local No. 26, 126 A. 399, 96 N. J. Eq. 632, above referred to, in applying the statute of 1883 (P. L. 1883, p. 36, 3 Comp. St. N. J. p. 3051, § 128) to the circumstances of that case, approves it as warranting the cessation of work on the part of the employés there concerned, I am

of the opinion that in this case the defendants have acted altogether within their legal rights, and that the injunctive restraint heretofore granted should be dissolved.