BARKER PAINTING CO. v. BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPERHANGERS OF AMERICA et al.

(Circuit Court of Appeals, Third Circuit. October 2, 1926.)

No. 3455.

1. Injunction ⬗101(2).

Courts will not interfere with strike so long as laborers strike in their own interest and in manner not itself unlawful.

2. Injunction ⬗126.

In proceeding to enjoin labor unions from enforcing rules, complainant has burden of establishing that rules are unlawful.

3. Injunction ⬗1.

Power to grant extraordinary remedy of injunction should be exercised by courts with great caution and applied only in very clear cases.

4. Trade unions ⬗3.

Labor union rules, requiring employer residing in one locality and doing work in another to select 50 per cent. of local men, and grant shorter work day and higher wage schedule prevailing in either locality, held not shown, in suit for injunction, to be unlawful or injurious to public.

5. Trade unions ⬗3.

Law is not concerned with alleged injury to public because of labor union rules, when injury is too remote to follow and weigh.

Buffington, Circuit Judge, dissenting.

Suit by the Barker Painting Company against the Brotherhood of Painters, Decorators, and Paperhangers of America and others. From a decree refusing a preliminary injunction, plaintiff appeals. Affirmed.

Henry S. Drinker, Jr., and Eric A. McCouch, both of Philadelphia, Pa., for appellant.

William A. Gray, of Philadelphia, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and GIBSON, District Judge.

WOOLLEY, Circuit Judge. This appeal is from a decree of the District Court refusing a preliminary injunction to restrain the enforcement of two labor union rules alleged to be unlawful because unjustly discriminatory and in restraint of trade and interstate commerce.

It will not be necessary to describe the

relation of the many respondents (appellees) beyond saying that the Brotherhood of Painters, Decorators, and Paperhangers extends throughout the United States. It is divided into district councils in various regions, composed of delegates from local unions, and these in turn have their own subdivisions. We shall, for convenience, refer to the group as "the union."

The rules here in question (articles 132 and 133 of the Union constitution) require that an employer of union labor, residing in one locality and doing work in another locality, shall select not less than fifty per cent. of his men from members of the union where the work is being done. They then require that his union employees, whether coming from a distant locality or residing in the locality of the work, shall demand the shorter work day and the higher wage scale prevailing in *either* locality.

These rules, as interpreted and enforced by the union, may be illustrated by the facts in this case, as follows: The Barker Painting Company (complainant below and appellant here), a New York corporation with headquarters in New York City, is engaged throughout the United States in the business of contracting painter. When it secures a contract, its practice is to send a foreman superintendent to the locality where the work is to be done. There he employs local painters—always members of the union—and proceeds with the work. On this occasion the complainant secured a contract for painting a building in Philadelphia, intending to meet the Union rules as to wages and hours of work in that district. The Philadelphia scale is $1.00 per hour, an 8-hour day and a 5½-day week. The New York scale is $1.31 per hour, an 8-hour day and a 5-day week. The complainant's employees resident in Philadelphia, acting under pressure from their union, refused to work in Philadelphia at the Philadelphia scale of wages and hours and demanded the New York scale as to both. Hence this suit.

The learned trial court refused an injunction restraining enforcement of these rules, basing its judgment on several decisions of state courts, notably the Court of Errors and Appeals of New Jersey in New Jersey Painting Company v. Local No. 26 Brotherhood of Painters, 96 N. J. Eq. 632, 126 A. 399; the Superior Court of Rhode Island in George A. Douglas & Bro., Inc., v. Clarence Mallette et al., not reported; and the Court of Common Pleas No. 1, Philadelphia County, Pennsylvania, in H. Newton Marshal Company v. Brotherhood of Painters, etc.,

not reported. Opinions in these unreported cases were before us.

Opposed to these three decisions by state courts are decisions of three courts of the United States—Hass v. Local Union No. 17 Brotherhood of Painters (D. C.) 300 F. 894; Barker Painting Company v. Brotherhood of Painters (Supreme Court of the District of Columbia), not reported; and Barker Painting Co. v. Local No. 734 (District Court for the District of New Jersey) not reported.

All the cited state decisions are against injunctions; all the federal decisions favor injunctions. The learned trial court was inclined to the reasoning of the state decisions; and so are we, not because the respondents have shown that the rules are lawful, but, rather, because the complainant has failed to show that they are unlawful.

[1] The theory on which the federal decisions were rendered is that the rules impose on the outside contractor an unjust discrimination and, in consequence, inflict an injury on the public in that they operate unfairly to restrain trade. The theory on which the state cases were decided initially, and necessarily, includes an admission that the rules work discrimination in some degree against the outside contractor, but it recognizes that it is not every discrimination that is unlawful. The courts in the latter cases restate what is now settled law, that employers have no vested interest in the labor of workers and that their workers have a right, individually and collectively, to lay down terms on which they will sell their labor for the highest return they can obtain, and when not satisfied, they have a right to strike. So long as they do this in their own interest, not with the purpose of assailing others, and do it in a manner not in itself unlawful, the courts will not interfere. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Mayer v. Journeymen Stonecutters Ass'n, 47 N. J. Eq. 531, 20 A. 492; My Maryland Lodge v. Adt, 100 Md. 238, 249, 59 A. 721, 68 L. R. A. 752; Bessert v. Dhuy, 221 N. Y. 342, 117 N. E. 582, Ann. Cas. 1918D, 661; National Protective Ass'n v. Cummings, 170 N. Y. 315, 321, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Toledo, etc., R. R. Co. v. Pennsylvania Co. (C. C.) 54 F. 730, 19 L. R. A. 387.

[2] Insistently urging that the rules in question and the manner of their enforcement by the Union are unjustly discriminatory against the complainant and all other employers similarly situated and operate to the injury of the public (United States v. Addystone

Pipe Co., 85 F. 271, 282, 29 C. C. A. 141, 46 L. R. A. 122; Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, 66, 22 L. Ed. 315), the complainant further urges that the rules are not made for any justifiable or, indeed, for any visible benefit to the laborers themselves except that thereby they may arbitrarily obtain higher wages in the given circumstances and that no ground or reason has even been intimated by the Union or its counsel justifying them. In this proceeding the burden of justifying the rules does not rest on the respondents; it is for the complainant, who pressed for a preliminary injunction before the answer was filed, to establish that the rules are unlawful by evidence sufficient to invoke that extraordinary remedy. While it is true the defendant union has not pointed out specific reasons for the rules, there is, perhaps, enough in the case to warrant these observations:

The Union is national in scope and operates through its local bodies. The general trend of its constitution and governing rules, obviously, is to coerce the employment of union labor everywhere. Other purposes, equally obvious, are to broaden employment and conform wages to economic conditions prevailing in different sections of the country.

[3-5] Under the rules in question the outside employer is free to take fifty per cent. of the laborers he may need from his home locality and put them at work in the distant locality. Then he is required to pay them the home rate, if higher. No one has complained of this. When he has taken some of his employees with him, he must employ the remainder at the place of the work. There the wage rate may be lower and the time of labor longer. If he pay a higher rate to the home laborers and a lower rate to the local laborers, trouble will inevitably follow. May not the Union legislate against this occurrence? But, as here, the outside employer may, if he choose, take with him no home laborers and employ all of his men at the distant point where the work is to be done and where wages are lower and hours longer than in his home locality. May not the Union, national in scope, make laws for the protection of its members everywhere, that is, may it not prescribe that when an employer leaves his locality of higher wages and shorter hours and thereby conceivably leaves at home laborers unemployed, he must pay the home wage rate in the distant locality? In other words, may not the Union legislate for the continued employment of laborers in varied localities at varied wage rates by providing rules that will measurably insure employment everywhere? Moreover, in large communities there is a more or less fixed labor supply. That labor supply, considered in respect to the local demand for labor and in respect to the local cost of living, determines the local wage rate and hours of labor. Obviously these factors vary in different communities. When thrown out of their relation one with another, that is, when thrown out of balance by influx of laborers and increase of work at one place, or a decrease of laborers and a decrease of work at another place, or transposing these factors, by an increase in one and a corresponding decrease in the other, might not confusion arise to the prejudice of workmen against which the Union may provide by rules? We advert to these possibilities, certainly not to express our views, nor to intimate sympathy with the rules—for assuredly we have none—nor to suggest arguments in their support or reasons justifying their promulgation, but merely to show that many variable and intangible factors inevitably enter into the situation, making the injunctive process of doubtful propriety and legality. It is a principle long recognized that the power to grant the extraordinary remedy of injunction should be exercised by courts with great caution and applied only in very clear cases. Truly v. Wanzer, 5 How. 141, 12 L. Ed. 88; Irwin v. Dixion, 9 How. 11, 13 L. Ed. 25; 14 R. C. L. 308, 341. Because of many unknown factors and the uncertainty of what would be the consequences to both employers and employees of a ruling of the nature sought by the complainant, the case is far from clear. Without doubt a distant employer may be confronted by a practical difficulty when, away from home, he comes against the respondent's rules, and, concededly, the difficulty, when occurring, amounts to discrimination against him in some degree. Yet the complainant has not convinced us that such discrimination, in kind and degree, is so unreasonable that it is unlawful and that, in consequence, it calls for relief by injunction. United States v. Addystone Pipe Co., 85 F. 271, 282, 29 C. C. A. 141, 46 L. R. A. 122; Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, 66, 22 L. Ed. 315; The Standard Oil Company of New Jersey et al. v. The United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; United States of America v. American Tobacco Co., 221 U. S. 106, 31 S. Ct. 632, 55 L. Ed. 663; American Tobacco

Co. v. United States of America, 221 U. S. 106, 31 S. Ct. 632, 55 L. Ed. 663; Huskie v. Griffin, 75 N. H. 345, 74 A. 595, 27 L. R. A. (N. S.) 966, 139 Am. St. Rep. 718. Nor has the complainant persuaded us that the offending rules operate to injure the public in the legal sense of that term. Any action that arbitrarily or artificially raises the cost of a thing might be regarded as an injury to the consuming public; yet, when (as here) the injury to the public is too remote to follow and weigh, the law is not concerned with it.

These views—the result of a cold consideration of the cited authorities—are decisive of the suit and sustain the decree below.

BUFFINGTON, Circuit Judge (dissenting). This case involves a quarrel between two members of a labor union. It centers around application of union rules. Stripped of all contentions which becloud the case, the real question involved is an attempt by a Philadelphia union contractor, by these rules, to prevent a New York union contractor from competing with him on equal terms on work done in Philadelphia. Enforced as they will be by the affirmance of this case, the rules shut out a citizen of the United States from fair competition in Philadelphia business simply because he is a resident of New York State, and give to his competitor a monopoly of that business because he is a resident of Pennsylvania. This practical and devised effect of the rules stifles fair competition, is, in my judgment, unfair, and in common parlance is not a square deal between two competitors generally, but especially so between members of a common union, where fair play and equality of opportunity should prevail.

When the rights of the public, who, in the end, pay the increased cost incident to the restriction of fair competition, are considered, wider results of the injustice of the rules are apparent, and when it is further considered that the government of the United States—to say nothing of states and municipalities—in the construction of public buildings and other improvements, would by such rules be hampered, if not indeed hindered, in the government's aim to afford citizens of all states an equality of competition in public work in any and every state, the widespread and serious evil of such competition-suppressing rules becomes a matter far beyond the personal injustice here effected by one member against a fellow member of his union.

For these reasons, I respectfully record my dissent.