Woodruff & Klein, of New Haven, Conn., and Tom Carsello, of Ansonia, Conn., for appellant.

Robert P. Butler, U. S. Atty., of Hartford, Conn., and Arthur T. Gorman, Asst. U. S. Atty., of New Haven, Conn.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

## RAMBUSCH DECORATING CO. v. BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA et al.

### No. 293.

Circuit Court of Appeals, Second Circuit.

June 19, 1939.

Walter R. Hart, of Brooklyn, N. Y. (Daniel A. Dorsey, of New York City, and Louis Timberg, and Rubin Mazel, both of Brooklyn, N. Y., on the brief), for appellants.

A. E. Robert Friedman, of Brooklyn, N. Y., for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This controversy involves the meaning and validity of a certain provision of the defendant Brotherhood's constitution, which governs the labor relations of the plaintiff employer with the defendant union, that on a job by a non-local contractor the shorter work day and higher rate of wages of either the contractor's home or the location of the work shall prevail. The complainant sought a declaratory judgment that this provision, if construed to require a contractor who comes from a district where wages higher than those paid locally prevail thus to pay higher wages than do the local contractors, was discriminatory and in violation of the antitrust laws. The order below adopted the contention of the complainant, held this provision void, as in unlawful restraint of interstate trade, and declared that the complainant was required to pay members of the defendant Brotherhood only the rate of wages prevailing in the locality where the complainant was engaged in the performance of work. From this order the defendants, the Brotherhood and Ackerley, its general vice-president, have appealed.

The complainant is engaged in the business of producing murals on canvas and manufacturing decorative leaded art glass in its New York studios and shipping its product to various parts of the United States, where it is finished and hung and

installed. The Brotherhood consists of many local unions, district councils, and other subordinate bodies in this country and Canada—all subject to the constitution and by-laws of a national· organization which is a corporation organized under the laws of the State of Indiana. The members of the union are engaged in the trade commonly called the decorating, painting, paper hanging, and glazing industry. The issue in this action was originally formed by the defendants' demurrer to the complainant's petition for the declaratory judgment. Hearing on the demurrer was not had, however, since the parties filed an agreed statement of facts, upon the basis of which the District Court rendered its decision. On some of the material issues in this case this agreed statement is not merely unenlightening, but is, indeed, confusing. And the District Court filed no opinion, explaining the grounds for its decision. It is unfortunate that so important a matter must be decided upon so meager a record. Yet this is all we have before us.

The deficiencies of this statement appear at the outset when we attempt to determine how far the complainant has bound itself to observe the provisions of the defendant Brotherhood's constitution. In its original petition, complainant asserted that it had entered into a· trade agreement in writing with this defendant, whereby the latter agreed to furnish it with the men it would require "in the execution of its painting and decorating contracts," and that by the terms of this agreement "the complainant became obliged to employ only members of the Brotherhood." Nevertheless it stated, "Nor does the said contract incorporate by reference or recital the constitution of the Brotherhood." This petition was superseded by the agreed statement of facts, wherein are contained various assertions which are predicated upon the existence of an agreement between the parties making this constitution applicable. Thus, it is said that for many years prior to the controversy "the complainant has employed members of the Brotherhood exclusively and has complied with all the rules and regulations agreed upon between the complainant and the defendant," and further that it is "complying with its agreement with the Union" by employing that number of local workmen— 75 per cent—required by the defendant's constitution. The parties in their briefs and argument have assumed that there is a closed-shop contract between them. Unless the complainant has agreed to be bound by the provision of the Brotherhood's constitution in its relations with its workmen, there is no need for it to obtain an adjudication of the meaning of this document. We shall assume, therefore, as the parties so clearly do, that the contract between them is intended to make the provision in question applicable to this controversy.

The particular dispute leading to this action arose because the complainant started work, in June, 1938, on a contract it had for decorating and for painting and installing murals in the Hotel Roanoke in Roanoke, Virginia. Pursuant to its agreement with the Brotherhood, the complainant made arrangements to employ at least 75 per cent of its required men for the Roanoke job from among union men residing in the Roanoke district. But a dispute arose because the prevailing wage for this type of work in Roanoke was 75 cents per hour, while the New York wage was $1.50 per hour. Since the complainant refused to pay the New York wage to local employees, claiming it was bound to pay only the Roanoke wage, defendants called a strike on or about June 28, 1938, and since then "the men have failed and refused to return to their work." This action was begun on July 8, 1938. Jurisdiction was originally asserted on the ground of diversity of citizenship of the parties, but this cannot be sustained, since both the complainant corporation and the individual defendant, Ackerley, are citizens of New York, although the defendant Brotherhood is a citizen of Indiana. The petition for a declaration of illegality of a contract under the anti-trust laws and of unlawful restraint of interstate trade by the defendants does, however, present a federal question adequate to give the District Court jurisdiction. Cf. Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88 (April 24, 1939); Duplex Printing Press Co. v. Deering, 254 U.S. 443, 461, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196.

While no coercive relief is asked for in this action—other than the general prayer for "such other and further relief as may be just, equitable, and appropriate in the premises"—defendants claim that the order amounts to an injunction against further enforcement of their contract. Complainant is technically accurate in stating that this is not the situation, but it is

obvious that the decree does nullify the provision in dispute, as it is intended to do and should do if the theory of law upon which it is based is sound.

The question turns upon Section 133 of the Brotherhood's constitution, which reads as follows: "Neither the General Executive Board nor any other authority shall have power to grant exclusive or special privileges to any local union or district council working under a charter of this Brotherhood; nor shall the G.E.B. or any other authority be invested with power to force any employer to bring men from one city to work in another city, if union men can be procured in such city where the work is to be erected and finished. All conditions of such localities shall be strictly adhered to, the shorter work day and the higher rate of wages of either locality to prevail in all cases. A card fully paid up, regardless of where it is issued, shall entitle the holder to the right to work in any city, provided he conforms to the working rules and conditions of the locality and that no strike or lockout exists in that locality."

Section 132, immediately preceding this section, contains the provision that not less than 75 per cent of the men working for a non-local contractor shall come from the local district, with an exception for "sign painters' work" if it can be completed in 16 man-labor hours. Section 134, the following section, requires a union member going to a non-local job to "demand in all cases the shorter work day and the higher scale," under penalty of fine or withdrawal from the shop of the employer.

An element of confusion is presented by the statement in the agreed facts that Section 133 "was enacted by the Brotherhood and became effective on January 1, 1938," whereas adjudicated cases to which we refer below show that the essence of the agreement here in dispute has been enforced many years before. The particular provision formerly appeared in a section previously numbered 132.[1] Whether the agreed statement may mean only that the constitution was newly reënacted to be effective January 1, 1938, without attempted indication of similarities between it and earlier constitutions, or that this particular provision was suspended or relinquished for a period to be again enacted as stated, we have no way of knowing.

■ At any rate it is clear that the essential provision here in dispute, that the non-local contractor must pay "the higher rate of wages of either locality," his home or the place of the job, has been held lawful in reasoned opinions by able courts; no appellate court has held to the contrary. Barker Painting Co. v. Brotherhood of Painters, etc., 3 Cir., 15 F.2d 16, certiorari denied 273 U.S. 748, 47 S.Ct. 449, 71 L.Ed. 871; Barker Painting Co. v. Local No. 734, Brotherhood of Painters, etc., 3 Cir., 34 F.2d 3, affirming D.C.N.J., 12 F.2d 945; Barker Painting Co. v. Brotherhood of Painters, etc., 57 App.D.C. 342, 23 F.2d 743, certiorari denied 276 U.S. 631, 48 S. Ct. 324, 72 L.Ed. 741; New Jersey Painting Co. v. Local No. 26, Brotherhood of Painters, Decorators, and Paper Hangers of America, 96 N.J.Eq. 632, 126 A. 399, 47 A.L.R. 384, reversing 95 N.J.Eq. 108, 122 A. 622. The case in Barker Painting Co. v. Brotherhood of Painters, 57 App.D.C. 342, 23 F.2d 743, reversed a decision of the Supreme Court of the District of Columbia. The court in 3 Cir., 15 F.2d 16 (Buffington, J., dissenting), repudiated the unreported decision in the Supreme Court of the District of Columbia, and another in the District Court for the District of New Jersey, as well as J. I. Hass, Inc., v. Local Union No. 17 of Brotherhood of Painters,

---

[1] Sec. 132 of the Brotherhood's constitution, as appears from the records in the cases before the Circuit Court of Appeals for the Third Circuit discussed below (Barker Painting Co. v. Brotherhood of Painters, etc., 34 F.2d 3 and 15 F.2d 16), is identical with sec. 133 in the present case, except that for the words "the shorter work day and the higher rate of wages of either locality to prevail in all cases," appear the words "the shorter work day and the higher scale of either locality to prevail in all cases." This provision has been in force since before 1913, 57 App.D.C. 342, 23 F.2d 743, 745; cf. D.C., 12 F.2d 945, 947, showing it was in force in 1922. This section contains, also, a provision that on work outside the home town there shall be employed not less than 50 per cent of the local men on the job, a provision now changed to the 75 per cent requirement of the present sec. 132. (This provision was relinquished in the case in 3 Cir., 34 F.2d 3.) Sec. 133 in the earlier cases is similar to the present sec. 134, except that no specific penalties are stated as to a member who violates it.

etc., D.C.Conn., 300 F. 894 (Thomas, J.). It stated that unreported decisions in Pennsylvania and Rhode Island were in accord with its holding. All matters of construction, as well as legality, here involved appear to have been fully considered in the cases cited. We think these precedents are sound and should be followed.

■ Complainant contends, however, that the provision should be construed as applicable only to the non-local workers, or that if it is not to be so construed, it must then be held to be discriminatory and void. We shall consider both these points, having in mind, however, that we cannot interfere with the contract the parties have made unless it is one which is in definite violation of law, and that we ought not to do indirectly by contract construction what we are thus prevented from doing directly.

■ On the issue of construction we see no justification for reading into the clear wording of Section 133, including the admonition that the shorter work day and the higher rate of wages of either locality are "to prevail in all cases," a limitation which in substance will add the words "where men are brought from one city to work in another city" to this provision. Nothing in either the prior or subsequent sentences of the section requires or justifies such an addition. Indeed, the remainder of the section points to a contrary view. The clause just prior to the one in issue deals specifically with local laborers (that no one has the authority to force the employer to bring in outside labor "if union men can be procured in such city where the work is to be erected and finished"); while the earlier clause of that same sentence has prohibited "exclusive or special privileges" to a local union. Clearly both local and non-local laborers are in contemplation.[2] The addition changes the sense completely and is an arbitrary rewriting of the provision not suggested or apparently thought of in any of the earlier

cases. It is as destructive of the apparent purpose of the contract as an outright determination of invalidity.

■ Taking the construction heretofore had of this provision, we can see that in ultimate essence it is a requirement securing higher wages when the stated conditions exist. Any contract designed to secure higher wages may restrain trade in one sense if it is effective, for it will hamper the weak employer who cannot afford the increase. In another sense, however, it may promote commerce by making for better and more peaceful labor relations. A contract with such a purpose is hardly to be held illegal of itself, or else all union organization goes. Cf. National Association of Window Glass Manufacturers et al. v. U. S., 263 U.S. 403, 44 S.Ct. 148, 68 L.Ed. 358; the Barker cases in 3 Cir., 15 F.2d 16 and 57 App.D.C. 342, 23 F.2d 743, supra; and the Clayton Act, 15 U.S.C.A. § 17, as cited in the last case above. Of course, the real point here relied on is the supposed discrimination between non-resident and resident contractors. Discrimination of this general kind is one of the most natural things in the world, applied by states and cities in civil service appointments; by courts in cost bonds and other burdens against non-residents; by merchants, customers, laborers, and servants in trusting and favoring the local man with whom they have long dealt and expect to deal in the future. Such discrimination, if made along state lines, might violate constitutional restrictions; but as pointed out in Barker Painting Co. v. Brotherhood of Painters, D.C., 12 F.2d 945, supra, that is not the case here, for the provision applies only to cities and towns, though uniformly and without discrimination among them.

The agreed statement does not set forth the reasons why this particular requirement was adopted by the union. Such reasons, however, are suggested in 3 Cir., 15 F.2d 16, and a note in 47 A.L.R. 391. They indicate that the immediate purpose of the rule is not so much to benefit the

---

2 Complainant tries to draw some support from the fact that in sec. 134 no penalties are asserted against a local member who fails to demand a higher than local rate when working with non-local men. But if the purpose of the disputed provision is, as suggested below, to prevent internal union disputes by discrimination between workers on the same job, we can surmise that forc-ing men to demand more pay than their co-workers on other jobs would likewise have germs of intramural conflict. Under the circumstances, we do not believe the clear expression of the employer's obligation can be controlled by these attempts to prevent strife within the union by stating the rights and duties of the men themselves.

individual workman to whom it may apply, as to preserve union solidarity and to prevent weakening of the union by the strife the other rule might bring. If the non-local contractor is forbidden to reduce the wages of the workmen he brings with him below the amount they have been receiving, then the local men will be dissatisfied and have a grievance against their own union if they are forced to work side by side with foreign labor receiving much more than they do. Thus, the construction claimed by the complainant here would result in a Roanoke workman receiving 75 cents an hour on the same work for which a New York workman was being paid $1.50 an hour. This may or may not be a wise provision; we express no opinion as to whether it, or indeed the section as a whole, contains requirements which are desirable or conducive to helpful labor relations. Decision on such matters is not our province. But we refer to these possible reasons as indicating that once the union had determined upon a policy requiring payment of a non-local wage to some workmen, it might well feel compelled to apply this requirement to all workers on the same job.

■ Certainly on this record the complainant has not sustained its burden of showing that the union rule restrains interstate commerce. As said in New Jersey Painting Co. v. Local No. 26, etc., at page 640 of 96 N.J.Eq., at page 402 of 126 A., 47 A. L.R. 384: "The attack is aimed not at the combination, but at its effect upon the employers. This is unsound, both legally and economically. In the last analysis, the prime object of the rule attacked is to establish a standard of wages." And so in Barker Painting Co. v. Brotherhood of Painters, etc., at pages 17, 18, and 19 of 15 F.2d 16: "The courts in the latter cases restate what is now settled law, that employers have no vested interest in the labor of workers and that their workers have a right, individually and collectively, to lay down terms on which they will sell their labor for the highest return they can obtain, and when not satisfied, they have a right to strike. So long as they do this in their own interest, not with the purpose of assailing others, and do it in a manner not in itself unlawful, the courts will not interfere [citing Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, and other cases]. * * * Without doubt a distant employer may be confronted by a practical difficulty when, away from home, he comes against the respondent's rules, and, concededly, the difficulty, when occurring, amounts to discrimination against him in some degree. Yet the complainant has not convinced us that such discrimination, in kind and degree, is so unreasonable that it is unlawful and that, in consequence, it calls for relief by injunction [citing United States v. Addystone Pipe Co., 85 F. 271, 282, 29 C.C.A. 141, 46 L.R.A. 122; Standard Oil Company of New Jersey et al. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734; and other cases]. Nor has the complainant persuaded us that the offending rules operate to injure the public in the legal sense of that term. Any action that arbitrarily or artificially raises the cost of a thing might be regarded as an injury to the consuming public; yet, when (as here) the injury to the public is too remote to follow and weigh, the law is not concerned with it."

■■ The confusion we find in the present record is indicated further by certain of the agreed facts relied on to show discrimination now directed particularly against the complainant. Thus it is stated that for many years prior to June 28, 1938, the complainant has employed members of the Brotherhood "exclusively" and has complied with all the agreed rules and regulations, "and has always paid the scale of wages which prevailed in the community where the job was located, the same scale applying to all contractors who did work in that locality." Whatever may be the force of these statements, we do not perceive their potency to render illegal a contract otherwise valid, whether it be an entirely new agreement or an old one only newly enforced against the complainant. Again there are statements in the agreed facts that one Walker, a contractor from Richmond working on the job, came from a district with a "higher" wage scale than that of Roanoke, but was "only required to pay the prevailing scale in Roanoke," and the defendants "have not demanded" that he pay more. Whether Walker had made a contract and was violating it, whether he had agreed to a closed or open shop, whether he was within the exception as to sign painters of Section 132, whether the defendants had simply failed to take advantage of their rights or had agreed not to—all these and similar questions are left unanswered in the record. Under these

circumstances the complainant's point must come to this, that the defendants cannot call a strike against the complainant without calling strikes against all other contractors on the job, whatever may be their mutual relations, or else the anti-trust laws are violated. We doubt that these laws can or should be forced so far.

The order is reversed and the action is remanded to the District Court for the entry of a judgment declaring the rights of the parties in accordance with the views hereinbefore stated, and on the basis that Section 133 of the Brotherhood's constitution applies to all employees, local or non-local, requires the payment to them of the higher wage, whichever it may be, of either the contractor's home or the place of work, and does not offend the anti-trust laws.

Reversed with directions.